722 A.2d 626 (1998)
317 N.J. Super. 554
Joseph THORNE, Plaintiff,
v.
Lori B. MILLER, Rita M. St. George, Defendants.
Lori B. Miller, Third Party Plaintiff,
v.
Donald L. Cook, Jr., Third Party Defendant.
Rita M. St. George, Plaintiff,
v.
Lori B. Miller, Joseph J. Thorne, and Donald L. Cook, et al, Defendants.
Yolanda Rivera, Plaintiff,
v.
Rita St. George, Lori Miller, et al, Defendants.
Superior Court of New Jersey, Law Division, Burlington County.
Decided October 19, 1998.
*628 Daniel J. Siegel, Haverton, PA (Gay and Chacker, P.C., attorneys), for plaintiff Thorne.
Steven Antinoff, Marlton (Parker, McCay & Criscuolo, attorneys), for defendant Cook.
Darren T. Hibbs, Marlton (Sue Ellen Johnson, attorney), for third party plaintiff Miller.
*627 WELLS, A.J.S.C.
This is a negligence action stemming from a car accident that occurred in Southampton Township on February 2, 1994. The accident took place on Route 530, a four lane road running east-west with two lanes in each direction. Prior to the accident, defendant, Lori Miller, was waiting to make a left turn out of a parking lot adjacent to the westbound lanes. She wanted to go east on Route 530 and needed to cross the westbound lanes to do so. Traffic was congested. Donald Cook was driving in the slow westbound lane (the outer lane) and stopped just before the parking lot Miller needed to exit. Cook "waved out" Miller twice in a way to indicate she could exit the parking lot in front of his vehicle. Miller responded, and as she crossed the westbound lanes, she struck a car traveling in the fast westbound lane (the inner lane). That car was operated by Rita St. George, a plaintiff, and the impact caused St. George to hit a vehicle driven by Joseph Thorne, another plaintiff in this case. Miller sued Cook as a third party defendant and St. George has brought a direct claim against him.
Cook, who was not involved in the accident but for his waving gesture, brings a motion for summary judgment on the ground that he owes no duty to Miller. None of the other negligence elements are briefed, nor are they decided by this opinion.
The issue is whether a "waving driver" (Cook) owes a duty of care to a "waved driver" (Miller) and other injured parties when an accident takes place after the waving driver undertakes a gesture to facilitate the waved driver's course of passage. In other words, does a waving driver assume a voluntary duty, and if so, what is the scope of that duty? The issue is one of first impression in New Jersey, I find a waving driver does assume a duty in cases like this as a matter of law.
For the most part, Cook relies on one case in support of his position that he owes no duty to Miller. The case is Duval v. Mears, 77 Ohio App.3d 270, 602 N.E.2d 265 (Ohio Ct.App.1991). The question in Duval was "whether a duty of care should be imposed upon a motorist, who signals another motorist traveling in the opposite direction to proceed to turn left in front of her to ascertain that it is safe to do so." Id. at 267. In reaching its holding, the court drew a distinction between acts of courtesy and those of obligation. By finding the signal gratuitous and out of courtesy, the court held that the waving driver did not owe a duty to the waved driver, nor was the waving driver obligated to ascertain the waved driver's safe passage. Id. at 267-68.
I find the Duval courtesy-obligation dichotomy highly subjective and very tangential to the issues normally arising from an automobile accident: negligence, proximate cause and damages. I reject the notion that the court should not impose a duty of care on gesturing drivers because it would tend to lessen civility, in general, on the highways, a serious problem these days much in the public press. But encouraging civility at the expense of driving safety is not, in my opinion, sound public policy. Instead, I rest my analysis of whether a gesturing driver owes a duty to whom the gesture is offered on the traditional principles of New Jersey law upon which common law duties of motorists are established.
"The question of whether a duty exists is typically a matter of law property decided by the court, not the jury." Wang v. Allstate Insurance Co., 125 N.J. 2, 15, 592 A.2d 527 (1991) (citing Strachan v. John F. Kennedy Memorial Hosp., 109 N.J. 523, 529, 538 A.2d 346 (1988)). "The actual imposition *629 of a duty of care and the formulation of standards defining such a duty derive from considerations of public policy and fairness." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110 (1993). Our courts refrain "from treating questions of duty in a conclusory fashion, recognizing that `[w]hether a duty exists is ultimately a question of fairness.'" Weinberg v. Dinger, 106 N.J. 469, 485, 524 A.2d 366 (1987) (quoting Goldberg v. Housing Auth., of Newark, 38 N.J. 578, 583, 186 A.2d 291 (1962)).
In determining the existence of a duty, courts must engage in a complex analysis that weighs and balances related factors, including the foreseeability and severity of the underlying risk of harm, the ability to exercise care to prevent the harm, the comparative interests and relationships of the parties, and, "based on considerations of public policy and fairness, the societal interest in the proposed solution." J.S. v. R.T.H., 155 N.J. 330, 337, 714 A.2d 924 (1998); Portee v. Jaffee, 84 N.J. 88, 101, 417 A.2d 521 (1980) (quoting Goldberg, supra 38 N.J. at 583, 186 A.2d 291). Finally, once a duty is identified, its scope and boundaries must be defined. Kelly v. Gwinnell, 96 N.J. 538, 552, 476 A.2d 1219 (1984). Analysis of the facts in this case and applying the above criteria show how a waving driver has a duty to a waved driver.
"Foreseeability of the risk of harm is the foundational element in the determination of whether a duty exists." J.S., supra, 155 N.J. at 337, 714 A.2d 924; Hill v. Yaskin, 75 N.J. 139, 143, 380 A.2d 1107 (1977). A driver's objective ability to foresee injury to another driver is crucial in determining whether the imposition of a duty is appropriate. Carter Lincoln-Mercury, Inc. v. EMAR Group, Inc., 135 N.J. 182, 194, 638 A.2d 1288 (1994). On a general level, it is reasonably foreseeable that engaging in gestures to facilitate the flow of traffic can lead to accidents, and that the risk of harm from car accidents is serious. It is also reasonably foreseeable that waved drivers will rely on these gestures. From Cook's perspective, it was reasonably foreseeable that cars could have been approaching from his left rear. It was also foreseeable that an accident caused by reliance on his gesture would be serious. Thus, principles of foreseeability favor the imposition of a duty upon Cook, the waving driver.
Next, before offering the gesture, Cook had the opportunity and ability to exercise care to prevent the harm. While he was not in the best position to ascertain if a car was behind him and to his left, he could have simply glanced in his rear-view mirror or turned his head. By taking these simple precautions before he gestured, the accident may have been avoided.
Finally, the comparative interests of the parties and notions of fairness indicate a societal interest in imposing a duty upon waving drivers. Driving is rife with risk and it is all too often that car accidents lead to death or bodily injury. The high degree of risk should encourage responsibility, interdependence, and cooperation among all drivers in a variety of traffic situations. Indeed, growing congestion has led to an increased use of gestures between drivers. At some traffic obstacles, gestures are standard operating procedure, and without the use of these signals, traffic flow would not be efficient. The risk of a careless gesture is very high when compared to the goal of accident prevention. It is relatively easy for waving drivers to check if passage is safe, and if unable to so, a driver contemplating a gesture should not take on the responsibility of directing traffic. Because gestures are so common and the risk of injury from car accidents so severe, it is only fair to impose a duty upon waving drivers. Though gratuitous, waving drivers assume a duty of care helping other drivers. See, Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275, 276 (N.Y. 1922), ("It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all.") (Cardozo, J.)
The scope of a duty is determined by the "totality of the circumstances" and the relevant duty is to act reasonably under all the circumstances confronting the drivers involved. Clohesy v. Food Circus Supermarkets, Inc., 149 N.J. 496, 514, 694 A.2d 1017 (1997); Palsgraf v. Long Island R.R. Co., 248 *630 N.Y. 339, 162 N.E. 99, 100 (N.Y.1928) ("The risk reasonably to be perceived defines the duty to be obeyed .") (Cardozo, J.). Factors used to determine the scope of a duty include the risk of harm and practicality of preventing it, and where the relevant behavior is easy to correct and the consequential harm serious, it is fair to impose a duty. J.S., supra, 155 N.J. at 339-40, 714 A.2d 924.
In Hopkins, the New Jersey Supreme Court stated that "[n]egligence has often been defined as the failure to take precautions that cost less than the damage wrought" by the harm. Hopkins supra 132 N.J. at 447, 625 A.2d 1110; United States v. Carroll Towing Co., 159 F.2d 169, 173, reh'g denied, 160 F.2d 482 (2d Cir.1947) (liability depends upon whether the burden of adequate precautions (B) is less than the injury (L) multiplied by the probability of that injury (P); i.e., whether B is less than P times L) (Hand, J.). As pointed out above, the risk of harm from car accidents is great, and it is often easy to prevent that harm. This being the case, a finding that a waving driver has some degree of responsibility in ensuring the safe passage of a waved driver makes sense under the formula discussed in Hopkins. Such is the case with Cook, as he could have looked in his mirror or turned his head to see if Miller was able to make safe passage across the westbound lanes of Route 530.
It is important to note I speak nothing of breach on the facts of this case. We must keep in mind that the imposition of a duty is not an automatic finding that the applicable standard of care was breached, nor is it a finding of negligence for that matter. Cook's gesture is ambiguous, as it could have meant it was safe to cross both lanes of westbound traffic, or merely that Miller was free to pull out in front of him. This is a factual issue appropriate for a jury. R. 4:46-2. Likewise, I offer no opinion on the issues of comparative negligence and contribution. N.J.S.A. 2A:15-5.1; N.J.S.A. 2A:15-5.3. It is not clear whether it was reasonable for the waved driver to have relied upon the gesture, and even if Cook is ultimately found negligent, the question of apportioning the percentage of fault remains with the jury.
Based on the considerations discussed above, I conclude that a duty exists in this case. If an operator of a motor vehicle gestures to a motorist to facilitate the movement of traffic, the waving driver is charged with the responsibility to do so with reasonable care, and may be subject to liability for foreseeable injuries if the remaining elements of negligence are met. Accordingly, Cook's motion is denied.