Walter C. BOUCHER, et al., Plaintiffs,

v.

Alarick B. GRANT, et al., Defendants.

No. CIV. A. 98–2812.

United States District Court,
D. New Jersey.

Nov. 22, 1999.

Robert Cleary, Acting United States Attorney, Paul A. Blaine, Assistant United States Attorney, United States Attorney's Office, Camden, NJ, for Defendant and Cross–Claimant, United States of America.

Jeffrey A. Libert, Woodbury, NJ, for Plaintiffs, Walter C. Boucher and Diane Boucher.

Thomas P. Farnoly, Gruccio, Pepper, Giovinazzi, De Santo, Farnoly, P.A., Vineland, NJ, for Defendants, Alarick B. Grant and Suzie Messado.

## OPINION

ORLOFSKY, District Judge.

At a time when "road rage" has become commonplace on our highways, this case requires this Court to decide whether a courteous wave by one driver to another can give rise to liability. Approximately three years ago, Plaintiff Walter C. Boucher ("Boucher") and Defendant Alarick B. Grant ("Grant") were involved in an automobile accident outside of the Getty gas station on Blackwood–Clementon Road in Clementon, New Jersey. In his Complaint, Boucher alleges, among other things, that Grant's vehicle was negligently "waved" out of the gas station by an unidentified employee of the United States Postal Service. *See* Complaint at ¶ 4. The United States of America, one of the defendants in this action, has moved for summary judgment, pursuant to Federal Rule

of Civil Procedure 56(e),[1] against Plaintiff, Boucher. *See* Notice of Motion (filed May 4, 1999). For the reasons set forth below, I shall deny the motion of the United States because I find that there are genuine issues of material fact and that the United States is not entitled to judgment as a matter of law.

## I. BACKGROUND

The accident giving rise to this negligence action, brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.* ("FTCA"), occurred on December 6, 1996, near the intersection of Blackwood–Clementon Road and College Drive in Clementon, New Jersey. *See* Gov't Br. Supp. Summ. J. ("Gov't Brief") at 1. The summary judgment record reveals that Blackwood–Clementon Road has east and west lanes of travel, with varying numbers of lanes at different points along the road. *See* Gov't Ex. 6. A Getty gas station is located on the easterly side of Blackwood–Clementon Road, near the intersection of College Drive. *See generally* Complaint at ¶ 4.

On December 6, 1996, Boucher was in his automobile traveling eastbound on Blackwood–Clementon Road. *See* Complaint at ¶ 3; Gov't Brief at 2. Of the three lanes running east, Boucher was traveling in the left-turn-only lane, or the lane farthest to the left. *See* Ex. 5 (Boucher Dep.) at 50. Simultaneously, Grant, with his left turn signal activated, was attempting to exit the Getty gas station to travel west on Blackwood–Clementon Road, *see* Ex. 8 (Grant Dep.) at 79, a direction of travel that would require Grant to cross the three eastbound lanes of traffic.

The traffic light at the intersection of Blackwood–Clementon Road and College

Road turned red and cars began to slow and stop accordingly. *See* Ex. 5 (Boucher Dep.) at 55; Ex. 8 (Grant Dep.) at 53–55. Grant testified that the driver of a United States Postal Service ("USPS") delivery truck, traveling in the middle eastbound lane, and an unidentified passenger automobile, traveling in the far-right lane (nearest the Getty station), both stopped just before reaching the Getty station exit. At that point, the unidentified postal employee indicated with a hand wave or gesture that Grant could "come on out." *See* Ex. 8 (Grant Dep.) at 63–64, 67–68, 73, 81; *see also* Ex. 8 Diagram. After waiting a few seconds, Grant drove out past the passenger and USPS vehicles and stopped directly in front of the USPS truck. *See* Ex. 8 (Grant Dep.) at 76–80.

At that point, Grant looked in both directions. To his right, Grant saw that the traffic light was still red. *See id.* at 80–81. The view to Grant's left, however, the left-turn-only lane, was obstructed by the USPS truck. *See id.* at 81. Grant testified that he did not remember the USPS employee making any further gestures. *See id.* at 76. As Grant brought his car into the left-hand-turn only lane, he collided with Boucher's oncoming vehicle, spinning Boucher's car so that it came to a stop facing west, or in the opposite direction from which it originally had been traveling, and allegedly injuring Boucher. *See* Ex. 5 (Boucher Dep.) at 92; *see generally* Ex. 8 (Grant Dep.) at 83, 85 (stating that after he inched the car forward and it hit Boucher's vehicle, Grant's car was in the same position while "[Boucher's] car was down the street").

Boucher testified that seconds before the crash, he saw the postal worker in the

---

1. Federal Rule of Civil Procedure 56 provides, in relevant part:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise

provided in this rule, must set forth specific facts showing that there is a genuine issue of material issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

USPS delivery truck's left side-view mirror and that the postal worker saw either Boucher or Boucher's car. *See* Ex. 5 (Boucher Dep.) at 82–85. Boucher's deposition testimony established that he never directly observed the postal employee, *see id.* at 83–84, and it later was established that the USPS truck was a right-hand-side driven vehicle. *See* Gov't Supplemental Brief at 9 n. 6 (citing Ex. 8 (Grant Dep.) at 72; Ex. 9 (USPS Handbook Excerpts)). However, Boucher testified that, through the side-view mirror, "I saw his face. I'm pretty sure-he either saw my face or he saw my car. He was looking at me or my car ... at that instance." Ex. 5 (Boucher Dep.) at 85.

Boucher further testified that, within a minute after the accident, Grant alighted from his vehicle, approached Boucher's car, asked Boucher if he was alright, apologized, and told Boucher that "[h]e thought the road was clear because the guy in the truck waved him on, said it was okay to come out." *See* Ex. 5 (Boucher Dep.) at 97–98; *see also* Ex. 4 (Boucher Interrog.) at ¶ 17 ("Grant came up to my car immediately after the accident and told me he thought the way was clear because the postman 'waived [sic] me on' ").

On June 15, 1998, Boucher brought suit against, among others, the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671, *et seq.* (1994), alleging that John Doe # 1, the unidentified USPS employee that waved to Grant, negligently "fail[ed] to keep a proper lookout, fail[ed] to sound a warning, negligently signal[ed] defendant Grant to enter the highway when the roadway was not clear, fail[ed] to yield to a vehicle in the roadway and such other acts of negligence as may be disclosed through pretrial discovery and/or testimony at the time of trial." Complaint at ¶ 7.

On May 4, 1999, the United States moved before this Court for summary judgment, pursuant to Federal Rule of Civil Procedure 56(e). *See* Notice of Motion (filed May 4, 1999). In support of its motion, the Government alleges that there are no genuine issues of material fact on two elements of Boucher's negligence claim and, therefore, the United States is entitled to judgment as a matter of law. *See* Gov't Brief at 7; Gov't Supp. Brief at 8. Specifically, the Government contends that the USPS employee's signal was not the proximate cause of the automobile accident because: (1) Grant interpreted the USPS employee's signal as simply allowing Grant to occupy the space in front of the USPS truck, not as an "all lanes are clear" signal; and (2) Grant did not rely on the "hand wave" because he hesitated in leaving the gas station. Moreover, the Government argues that the summary judgment record contains no evidence that the unidentified postal worker acted negligently.

In opposition to the Government's motion, Boucher argues that genuine issues of material fact exist because Grant relied on the postal employee's signal, interpreted as meaning "[g]o ahead." Pl.'s Br. Opp. Summ. J. ("Pl.'s Brief") at 4. In support of his argument, Boucher relies on both the deposition testimony and Grant's statements to Boucher immediately following the accident, which he contends are admissible for purposes of summary judgment because the statements are either an admission by a party opponent, pursuant to Fed.R.Evid. 801(d)(2)(A),(C), and (D), a present sense impression, or excited utterance, under Fed.R.Evid. 803(1) and (2), respectively, or res gestae. *See* Pl.'s Brief at 2–3. Furthermore, Boucher argues that under *Thorne v. Miller,* 317 N.J.Super. 554, 722 A.2d 626 (Law Div.1998), the issue of the postal employee's negligence is "a factual issue appropriate for a jury." *See id.* at 5 (quoting *Thorne,* 317 N.J.Super. at 561, 722 A.2d 626).

## II. LEGAL STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

"On a motion for summary judgment, the court must determine whether the evi-

dence shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Abraham v. Raso,* 183 F.3d 279, 287 (3d Cir.1999) (citing Fed.R.Civ.P. 56(c)). "Any factual dispute invoked by the nonmoving party to resist summary judgment must be both material in the sense of bearing on an essential element of the plaintiff's claim and genuine in the sense that a reasonable jury could find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "In opposing summary judgment, a party 'must do more than simply show that there is some metaphysical doubt as to material facts,' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but a court should not prevent a case from reaching a jury simply because the court favors one of several reasonable views of the evidence." *Abraham,* 183 F.3d at 287. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505; *see also Abraham,* 183 F.3d at 287. "Thus, while the nonmoving party must present enough evidence to demonstrate a dispute is genuine, all·inferences in interpreting the evidence presented by the parties should be drawn in favor of the nonmoving party." *Abraham,* 183 F.3d at 287 (citing *Boyle v. County of Allegheny Pa.,* 139 F.3d 386, 393 (3d Cir.1998)). "Cases that turn crucially on the credibility of witnesses' testimony in particular should not be resolved on summary judgment." *Id.*

If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.,* 922 F.2d 168, 175 (3d Cir.1990) (quoting *Jaroma v. Massey,* 873 F.2d 17, 21 (1st Cir.1989)). Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate." Fed. R.Civ.P. 56(e); *see Anchorage Assocs.,* 922 F.2d at 175. Rule 56(e) of the Federal Rules of Civil Procedure requires that the case be evaluated on its merits, with summary judgment being granted for the movant only if they are entitled to a judgment as a matter of law. *See Anchorage Assocs.,* 922 F.2d at 175.

## III. DISCUSSION

Under the FTCA, civil actions are permitted against the United States for:

> injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b); *see also* 28 U.S.C. § 2674 ("The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances ...."); *Richards v. United States,* 176 F.3d 652, 654 (3d Cir.1999). Moreover, "the FTCA provides that the United States is liable for tort claims in accordance with the law of the place where the tortious act occurred." *Witty v. United States,* 947 F.Supp. 137, 141 (D.N.J.1996)(Orlofsky, J.)(citing *Reo v. United States Postal Service,* 98 F.3d 73, 75 (3d Cir.1996)). In this case, because the allegedly tortious act of the USPS employee occurred in Clementon, New Jersey, the determination of whether any genuine issues of material fact exist must be made pursuant to New Jersey law. *See Witty,* 947 F.Supp. at 141.

New Jersey has joined a host of other states in finding that a driver who

gratuitously "waves" to another driver, in an effort to facilitate the "waved driver's" course of passage, assumes a duty of care. *See Thorne v. Miller,* 317 N.J.Super. 554, 557, 722 A.2d 626 (Law Div.1998).[2] Once this duty is undertaken, the waving driver must act reasonably under all the circumstances confronting the drivers involved. *See id.* at 560, 722 A.2d 626. Thus, like other negligence actions, the essential elements of an actionable claim of negligence in a "waving driver" case are: (1) the existence of a duty of care; (2) the defendant's breach of that duty; (3) the breach was the proximate cause of the plaintiff's harm; and (4) the plaintiff suffered actual damages. *See Weinberg v. Dinger,* 106 N.J. 469, 484, 524 A.2d 366 (1987).

## A. *Proximate Cause*

### 1. *The Interpretation of the Hand Wave*

■ The Government first contends that Grant's deposition testimony precludes the finding that the unidentified postal employee's wave proximately caused Boucher's injuries. Boucher, on the other hand, argues that the deposition testimony and the statements immediately following the accident reveal the existence of a genuine issue of material fact.

■ A driver's courteous wave indicating that he will remain in place and permit another motorist to proceed is open to two opposing interpretations. *See Cofield v. Nuckles,* 239 Va. 186, 192, 387 S.E.2d 493, 496 (1990). Such a gesture could signal to the receiver either that safe passage is limited to the area in front of the signaler's vehicle, or, more broadly, that passage is safe beyond the signaler's vehicle. *See id.,* 239 Va. at 192, 387 S.E.2d at 496. Because a signal interpreted as limiting the safe passage area to that solely in front of the signaler's vehicle cannot be the legal cause of an accident outside of that area, liability ensues only when the signal communicates the message that the driver can proceed safely across both lanes. *See Isaacs v. Larkin Elec. Co.,* No. 16948, 1998 WL 906394, at *4 (Ohio Ct. App. Sept. 4, 1998); *Askew v. Zeller,* 361 Pa.Super. 35, 42–43, 521 A.2d 459, 463 (1987)(finding that summary judgment was appropriate on causation grounds where uncontradicted deposition testimony established that driver interpreted signaling gesture not as signal that both lanes were clear, but that the signaler would remain stopped and driver was clear to proceed only through that lane). Where reasonable minds can differ on the interpretation of the signal, summary judgment is inappropriate. *See Frey v. Woodard,* 748 F.2d 173, 176 (3d Cir.1984); *Claxton v. Hutton,* 615 N.E.2d 471, 475 (Ind.Ct.App.1993); *Cunningham v. National Serv. Indus.,*

---

**2.** *See also Nolde Bros. v. Wray,* 221 Va. 25, 28, 266 S.E.2d 882, 884 (Va.1980); *Wulf v. Rebbun,* 25 Wis.2d 499, 503, 131 N.W.2d 303, 306 (Wis.1964); *Thelen v. Spilman,* 251 Minn. 89, 86 N.W.2d 700 (Minn.1957); *Devine v. Cook,* 3 Utah 2d 134, 149, 279 P.2d 1073, 1083 (Utah 1955); *Isaacs v. Larkin Elec. Co.,* No. 16948, 1998 WL 906394, at *4 (Ohio Ct.App. Sept. 4, 1998); *Lennard v. State Farm Mutual Automobile Ins. Co.,* 649 So.2d 1114, 1118 (La.Ct.App.1995); *Askew v. Zeller,* 361 Pa.Super. 35, 38–39, 521 A.2d 459, 461–62 (1987); *Cunningham v. National Serv. Indus., Inc.,* 174 Ga.App. 832, 835–36, 331 S.E.2d 899, 902 (Ga.Ct.App.1985); *Kemp v. Armstrong,* 40 Md.App. 542, 546, 392 A.2d 1161, 1164 (Ct.Spec.App.1978).

It should also be noted that this Court, applying New Jersey law at the direction of the Federal Tort Claims Act, relies on *Thorne v. Miller,* 317 N.J.Super. 554, 557, 722 A.2d 626 (Law Div.1998), the only reported New Jersey case on point, as persuasive of how the Supreme Court of New Jersey would decide the issue of a signaler's liability. *See Rousey v. United States,* 115 F.3d 394, 397 (6th Cir. 1997)(a federal court deciding a claim under the FTCA may consider "decisional law of the state's lower courts" when determining how the state's highest court would decide the issue); *cf. Orson, Inc. v. Miramax Film Corp.,* 79 F.3d 1358, 1373 & n. 15 (3d Cir.1996)(finding that a federal court sitting in diversity must predict how the state's highest court would resolve the issue); *Borman v. Raymark Indus., Inc.,* 960 F.2d 327, 331 (3d Cir.1992)(same); *Gruber v. Owens–Illinois, Inc.,* 899 F.2d 1366, 1369 (3d Cir. 1990)(same).

*Inc.*, 174 Ga.App. 832, 838, 331 S.E.2d 899, 904 (Ga.Ct.App.1985); *Massingale v. Sibley*, 449 So.2d 98, 101 (La.Ct.App.1984).

Although replete with ambiguous statements, the deposition testimony of Grant contains the following brief moment of clarity:

> Q(by Assistant United States Attorney Paul A. Blaine): Did you understand the gesture that the driver of [the USPS delivery truck] made to mean anything other than you could come out in front of that vehicle, [the USPS delivery truck]?
>
> A (by Mr. Grant): No.

Ex. 8 (Grant Dep.) at 82.

Despite this statement, which seemingly would preclude the liability of the USPS employee, this Court is required, pursuant to Federal Rule of Civil Procedure 56(e), to view all of the evidence before it, including interrogatories, so long as they contain admissible evidence. *See* Fed R. Civ. Pro 56(e); 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2722 (1998).

In one of the interrogatories served upon Boucher, the United States asked the following:

> State in detail the basis for each allegation you made that the party serving these interrogatories is liable for the incident complained of and enumerate all of the facts which you contend support each such allegation.

*See* Ex. 3 at ¶ 17. In response, Boucher answered that, "Mr. Grant came up to my car immediately after the accident and told me he thought the way was clear because the postman 'waived me on.'" Ex. 4 at ¶ 17. Furthermore, during his deposition, Boucher testified:

> Q (by Mr. Blaine): Now, after the collision, do you remember how much time went by before Mr. Grant came to your car?
>
> A (by Mr. Boucher): I would guess within a minute.
>
> Q: Well, guessing is not something we want you to do. If you can estimate it

for me, that's fine. If you don't know how long it was, that's fine also.

> A: Well, I know it was within a minute.
>
> Q: After the vehicles came to rest, what's the next thing you remember happening?
>
> A: I remember looking around and seeing Mr. Grant's car, seeing Mr. Grant get out of his car and come up to me.
>
> Q: Is that the first thing he did when he got out of his car was come to your car?
>
> A: Yes.

Ex. 5 (Boucher Dep.) at 97–98.

Boucher contends that this evidence should be considered as part of the summary judgment record because the statements are admissible in evidence either as an admission by a party opponent, pursuant to Federal Rule of Evidence 801(d)(2)(A),(C), and (D), a present sense impression, or excited utterance, under Federal Rule of Evidence 803(1) and (2), respectively, or res gestae. *See* Pl.'s Brief at 2–3. The Government argues that the Third Circuit's dicta in *David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 235 (3d Cir.1984), and more specifically, its progeny, *Shinners v. K–Mart Corp.*, 847 F.Supp. 31 (D.Del.1994), precludes a finding that Boucher's statement was an "excited utterance." *See* Gov't Brief at 22–24.

■ I disagree with the Government and find that the hearsay statements subsumed within the interrogatory answer and deposition testimony are appropriately considered by this Court as "excited utterances," pursuant to Federal Rule of Evidence 803(2). The Federal Rules of Evidence provide that an "excited utterance" is admissible so long as it is "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed.R.Evid. 803(2). The Third Circuit has held that the requirements for the admission of an excited ut-

terance include: (1) a startling occasion; (2) a statement relating to the circumstances of the startling occasion; (3) a declarant who appears to have had opportunity to observe personally the events; and (4) a statement made before there has been time to reflect and fabricate. *See Miller v. Keating*, 754 F.2d 507, 510 (3d Cir.1985)(quoting 6 J. Wigmore, Evidence §§ 1750–51 (J. Chadbourne rev.1976)); *see also United States v. Mitchell*, 145 F.3d 572, 576 (3d Cir.1998).

An automobile accident and a contemporaneous statement by an individual involved in that accident concerning its cause undoubtedly satisfy the first three elements of the excited utterance hearsay exception.[3] The question becomes, then, whether the hearsay statements meet the last condition of admissibility, namely spontaneity. *See Miller*, 754 F.2d at 511.

■ In order to consider the statements for purposes of the Government's motion for summary judgment, this Court must make a determination whether Grant was "under the stress of excitement" while speaking to Boucher "immediately after the accident." *See* J. Weinstein, Evidence ¶ 803.04[4](1999); Ex. 4 (Interrog.) at ¶ 17. "For the excited utterance exception to apply, the court must be able to find that the declarant's state of mind at the time of making the declaration ruled out the possibility of conscious reflection." *Id.*

Boucher testified that his exchange with Grant occurred "within a minute" of the accident. *See* Ex. 5 (Boucher Dep.) at 97. Grant himself testified that as a result of the crash, he was "scared ... shaken up." Ex. 8 (Grant Dep.) at 85. The brief lapse of time coupled with Grant's mental state cannot give rise to a finding of conscious reflection. Therefore, I conclude that the statement was made while Grant was still in an excited state and before he could reflect and fabricate.

The cases cited by the Government, *David by Berkeley*, 740 F.2d at 230, and *Shinners*, 847 F.Supp. at 31, are clearly distinguishable from the facts of this case. In *David by Berkeley*, 740 F.2d at 235, the Third Circuit affirmed the finding that a statement made by a declarant after she saw a pregnant woman fall directly on her stomach, and heard by three different people who testified at the trial, was an excited utterance. *See id.* However, in its determination that the trial court was reasonable in determining that the event was in fact "startling" and that there was insufficient time to fabricate, the Court remarked that the decision "reached the very outer bounds of [the trial judge's] permissible discretion" and "as trial judges we may have ruled differently." *See id.*

Contrary to the Government's assertions, I do not believe that this case presents an issue that pushes to the "very outer bounds of [my] permissible discretion." *See id.* For one, the automobile accident in this case presents a much more startling event than a fall in a supermarket. Second, unlike the declarant in *David by Berkeley*, there is testimony in this case that Grant was "scared" and "shaken up." *See* Ex. 8 (Grant Dep.) at 85. Finally, the Third Circuit noted that it was reasonable to conclude that the declarant in *David by Berkeley* did not have time to fabricate since "the substance of her statement was a matter of sensory perception, it was unsolicited and it was made within seconds of the fall." *See David by Berkeley*, 740 F.2d at 235. Similarly, in this case, Grant's statement regarding the postal employee's gesture was a matter of perception, was not solicited by Boucher, and was made within a minute of the accident.

---

3. Judge Weinstein's treatise on Federal Evidence instructs that "[t]he test [to determine whether an event is "startling"] should not be whether the judge considers the matter routine and unexciting, but whether the declar-

ant probably did." J. Weinstein, Evidence ¶ 803.04[2][b] (1999). Furthermore, "[i]f the subject matter of the statement is such as would likely be evoked by the event, the statement should be admitted." *Id.* at ¶ 8–3.04[5].

The Government also relies on *Shinners v. K–Mart Corp.*, 847 F.Supp. 31 (D.Del. 1994) in support of its argument that Grant's statement was not an "excited utterance." Such reliance is misplaced. In *Shinners*, another case involving a store patron, the District Court explicitly distinguished *David by Berkeley* and found that a statement, heard only by the elderly victim and made by an unidentified declarant after he saw the victim fall on her side, was not an excited utterance. *See id.* at 34. Clearly, the facts and the presence of an unidentified declarant distinguish *Shinners* from the facts of this case. *See e.g. Miller*, 754 F.2d at 510 ("[a]t [a] minimum, when the declarant of an excited utterance is unidentified, it becomes more difficult to satisfy the established case law requirements for admission of a statement under Fed.R.Evid. 803(2)").

Because I find that Grant's hearsay statement is otherwise admissible as an "excited utterance," the statement is properly before this Court and must be considered as part of the summary judgment record.[4] Consequently, I find a crucial discrepancy between Grant's statement to Boucher following the accident (that the postal worker waved Grant out) and Grant's deposition testimony (that Grant interpreted the postal worker's gesture to mean only that Grant was safe to travel in the USPS truck's lane). Accordingly, I find that genuine issues of material fact exist as to whether the postal employee's conduct was the proximate cause of the accident involving Grant and Boucher, and therefore summary judgment inappropriate on this ground.

2. *Grant's Reliance on the Postal Worker's Gesture*

The United States also argues that Grant's hesitation upon his exit from the Getty gas station and the fact that he stopped in front of the USPS delivery truck and independently looked for traffic warrants a finding by this Court that Grant did not rely on the gesture. For the reasons set forth below, I find that summary judgment is precluded by the existence of genuine issues of material fact regarding Grant's reliance on the postal employee's gesture.

▮ In "waved driver" cases, an additional element of proximate cause involves whether or not the waved driver actually relied on the gesture of the signaling driver. "Only with such reliance can any act of negligence in signaling be considered a proximate cause of the plaintiff's injuries." *Isaacs*, 1998 WL 906394 at *4; *see also Ring v. Poelman*, 240 Va. 323, 327, 397 S.E.2d 824, 826 (1990)(finding that signaling driver was not the proximate cause of collision when waved driver stated that he was not relying on that hand signal in entering occupied travel lane). Accordingly, summary judgment for the signaling driver is appropriate if the facts do not support an inference that the waved driver relied on the signal.

▮ In this case, Grant's fleeting hesitation in pulling out of the Getty gas station does not support a finding that he did not rely on the postal employee's hand wave. *Cf. Dace v. Gilbert*, 96 Ill.App.3d 199, 201, 51 Ill.Dec. 869, 421 N.E.2d 377, 378 (1981)(finding that signaling driver was not the proximate cause of accident where waved driver, who did not rely on the signal, waited one minute before turning left into oncoming traffic). Indeed, the testimony in this case provides that Grant exited the gas station within seconds of the postal worker's hand gesture. *See* Ex. 8 (Grant Dep.) at 76–77. It would be a dubious proposition at best to find such a momentary hesitation sufficient to eradicate the accountability of an otherwise liable signaling party.

---

4. Because I find that Grant's statement is admissible as an excited utterance under Federal Rule of Evidence 803(2), I need not address Boucher's arguments regarding the applicability of Federal Rules of Evidence 801(d)(2)(A),(C),(D), 803(1) and res gestae.

■ Additionally, I find that, in this case, the fact that Grant brought his vehicle to a stop and then independently looked for oncoming traffic material does not preclude a finding that Grant relied on the hand wave. During his deposition, Grant testified that as he was waiting to exit the Getty gas station, his left turn indicator was activated. *See* Ex. 8 (Grant Dep.) at 96. He then answered the following questions:

Q(By Grant's attorney Mr. Contarino): So you believe that the postal worker saw your turn signal that you wanted to exit the parking lot and you said you had your left turn signal on as if you wanted to go westbound on Blackwood–Clementon Road?

A (By Mr. Grant): Yes.

Q: When the postal worker waved you out, did you rely on that signal?

A: Yeah. Both that and knowing that the light [at the intersection of Blackwood–Clementon Road and College Road] was red, yeah.

*Id.* at 96–97. Grant's deposition testimony that the postal worker saw his left turn signal coupled with his statement that the postman "waved him through" could reasonably cause the trier of fact to conclude that Grant relied on the postal worker's gesture. *See e.g., Barber v. Merchant,* 180 A.D.2d 984, 580 N.Y.S.2d 573 (N.Y.App.Div.1992)(summary judgment for signaling driver was inappropriate when waved driver relied upon signal and also checked traffic a second time before collision). Conversely, the trier of fact might conclude that Grant interpreted the wave as guaranteeing only the safe passage to the USPS truck's lane and, coupled with the evidence that Grant stopped in front of the USPS truck and independently looked for traffic, then decide that Grant did not rely on the gesture as ensuring the safe passage across all lanes. *See e.g., Shank v. Government Employees Ins. Co.,* 390 So.2d 903 (La.Ct.App.1980)(finding that pedestrian did not rely on hand gesture where evidence showed that pedestrian

passed safely in front of the defendant's vehicle, paused, and then attempted, unsuccessfully, to cross the next lane).

In sum, genuine issues of material fact exist as to the proper interpretation of the hand wave, and whether or not Grant relied on the postal worker's gesture.

### B. *Evidence of Breach of Duty*

■ The Government next contends that Boucher failed to introduce specific evidence of a negligent act by the postal employee. In support of this allegation, the Government points to the facts that Boucher never saw the postal employee make the disputed gesture, "never saw the postal driver do anything other than look in plaintiff's direction through the left side view mirror of his van," and only briefly exchanged glances "almost immediately before plaintiff's car was forcefully impacted by Grant's." Gov't Brief at 17. Boucher failed to respond to the Government's allegation in his opposing papers; however, this Court will grant summary judgment, pursuant to Federal Rule of Civil Procedure 56(e), only if "appropriate." I find that, in this case, it is not.

During his deposition, Boucher testified that prior to the accident, he observed the postal employee looking in his direction, either at Boucher's face or car. The full testimony included the following:

Q (by Mr. Blaine): Now, you've mentioned several times that you saw the driver of the vehicle in the vehicle's side-view mirror?

A (by Mr. Boucher): Right.

Q: Did you actually see the driver seated in the vehicle without the use of the mirror?

A: No.

. . . . .

Q: In seeing the driver in the mirror, does that allow you to say where you think the driver was seated?

A: No.

Q: Other than—

A: I just didn't give any thought to that. It all happened so fast. I just remember coming down here and saying, why the hell did he stop there? Why did he stop there? It's kind of like he almost looked me in the eye. I saw him. He saw me. That's the extent of what I remember. As far as actually if he was seated or where he was at in the vehicle, I don't know. I couldn't tell you.

.    .    .    .    .

Q: Were those your words, that he almost looked you in the eye?

A: It appeared as though he was looking—yeah, we looked each other in the eye, yes. If he was looking at my car, I can't really say, he was looking me in the eye. I feel he saw me and I saw him.

Q: What is it that allows you to say that you feel he saw you?

A: Well, because that appeared to be where his eyes were focusing when he was looking out his mirror. I'm coming down like this. I look over, and I see him in the mirror, and I'm pretty sure he sees me in the mirror.

Q: But did your eyes meet? Do you have a specific recollection that your eyes met through the mirror?

A: Yeah, pretty much, pretty much. I saw his face. I'm pretty sure-he either saw my face or he saw my car. He was looking at me or my car—

Q: And—

A: at that instance.

Ex. 5 (Boucher Dep.) at 81–85. The Government argues that Boucher "hedged in his answers to questions about this topic" and, as a consequence, "hardly [raises] an unqualified assertion of concrete fact." Gov't Brief at 17 n. 5. I disagree.

The quoted deposition testimony raises the question of whether the postal employee ignored an approaching danger. *See Lennard v. State Farm Mutual Automobile Ins. Co.,* 649 So.2d 1114, 1119 (La.Ct.App.1995)(reversing jury finding against unidentified signaling driver where there was "no evidence in the record indicating the phantom had actually checked for traffic or intended to communicate to [the waved driver] that it was safe to cross the highway"); *Cofield v. Nuckles,* 239 Va. 186, 192–93, 387 S.E.2d 493, 496–97 (1990)(finding absence of evidence that signaling driver negligently ignored an approaching danger where eyewitnesses testified that signaling driver appeared to look into side mirror and then waved pedestrian across).

Furthermore, although it has raised the fact that the postal vehicle was a right-side driven vehicle, there is no evidence to suggest that the postal employee was not in a position to see the cars traveling in the left-hand-only lane. *See e.g., Kerfoot v. Waychoff,* 501 So.2d 588, 589–90 (Fl.1987)(signaling driver in lane full of traffic could not determine the traffic status of outside lane); *Nolde Bros., Inc. v. Wray,* 221 Va. 25, 28, 266 S.E.2d 882, 884 (1980)(signaler in driver's seat was not in a position to see right-lane traffic traveling in the same direction). To the contrary, Boucher's deposition testimony that the postal worker either saw him or his car, suggests that the postal worker was in fact in a position to see the approaching traffic. In sum, I find that these are questions of material fact that preclude the finding of summary judgment in this case.

## IV. CONCLUSION

For the reasons set forth above, I shall deny the motion of the United States of America for summary judgment, pursuant to Federal Rule of Civil Procedure 56(e), because I find that there are genuine issues of material fact and that the United States is not entitled to judgment as a matter of law. The Court shall enter an appropriate order.

## ORDER

This matter having come before the Court on the motion of Defendant, the

United States of America, for summary judgment, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, Robert Cleary, Esq., Acting United States Attorney, Paul A. Blaine, Esq., Assistant United States Attorney, appearing on behalf of Defendant, the United States of America, and Jeffrey A. Libert, Esq., appearing on behalf of Plaintiff, Walter C. Boucher; and,

The Court having considered the submissions of the parties, for the reasons set forth in the OPINION filed concurrently with this ORDER;

IT IS, on this 22nd day of November, 1999, hereby ORDERED that the motion of the United States of America, for summary judgment, pursuant to Federal Rule of Civil Procedure 56(e), is DENIED.