[898 NYS2d 120]

Rolf Ohlhausen, Respondent, v City of New York et al., Defendants, and New York City Transit Authority, Appellant.

First Department, April 1, 2010

APPEARANCES OF COUNSEL

*Wallace D. Gossett,* Brooklyn (*Lawrence Heisler* of counsel), for appellant.

*Hofmann & Associates*, New York City (*Dario Anthony Chinigo* of counsel), for respondent.

**OPINION OF THE COURT**

Saxe, J.

On September 14, 2005, a clear, sunny morning, plaintiff Rolf Ohlhausen, a 73-year-old architect, left his apartment on the Upper West Side of Manhattan, and drove his Suzuki motorcycle downtown, headed for the New School in Greenwich Village, where he was enrolled in a philosophy course.

Shortly before 10:00 A.M. on that date, Police Officer Keith Murray, in pursuit of a robber, was driving his patrol cruiser on West 4th Street. The officer came to a stop at a red light at the intersection of West 10th Street and West 4th Street, with lights and siren on, ready to continue north on West 4th Street.

A third participant in the incident yet to occur, New York City Transit Authority bus driver Jeffrey Whaley, was at the same time driving his bus eastbound on West 10th Street. Although the bus had the green light in its favor, the driver stopped at the intersection of West 4th and West 10th, in order to allow Officer Murray's patrol car to proceed. When Whaley's and Officer Murray's eyes met, Whaley signaled to the officer that the officer could proceed by "waving" him through the intersection. Before doing so, Whaley testified, he had turned his head and checked in his left and right mirrors to ascertain whether there was any traffic traveling alongside his bus on West 10th Street, and had seen none. He could see the full length of his bus, and back to the end of the block, although the side of the bus was his main concern.

Officer Murray drove his police car into the intersection after the bus driver waved him through, but did not immediately go through the intersection; instead, he testified, he stopped in front of the bus for what he thought was about 15 to 20 seconds, so that the bus served as a partial shield, blocking his view of

traffic flowing across West 10th Street. He waited there, with his siren off, in the hope that the perpetrator he was looking for would run in front of the patrol car or run southbound on Seventh Avenue South toward the subway entrance, which would place him in the officer's view. After the 15- or 20-second pause, the police car proceeded forward, without first reactivating the siren. Officer Murray testified that by the time he proceeded past the bus through the intersection, the bus driver's earlier hand gesture had no further effect on his driving decisions.

At this time, plaintiff was riding his motorcycle at a speed of 20 to 25 miles per hour eastbound on West 10th Street with the light at the West 4th Street intersection in his favor; with the bus obstructing his view of the police car on West 4th Street, he saw nothing to concern him, and he heard no siren. As he proceeded into the intersection, he collided with Officer Murray's police car as it continued further into the intersection.

The Transit Authority moved for summary judgment dismissing plaintiff's complaint as against it. Thus, we are concerned not with plaintiff's claim of liability against the City of New York based on the actions of the police car, but *only* his claim based on the conduct of the bus driver. The motion court denied the Transit Authority's motion, relying on a common-law rule that "[u]nder certain circumstances, a driver of a motor vehicle may be liable to a pedestrian where that driver undertakes to direct a pedestrian safely across the road in front of his vehicle, and negligently carries out that duty" (2008 NY Slip Op 33603[U], *2, quoting *Valdez v Bernard*, 123 AD2d 351, 351 [1986]; *see also Yau v New York City Tr. Auth.*, 10 AD3d 654 [2004], *lv denied* 4 NY3d 701 [2004]; *Robbins v New York City Tr. Auth.*, 105 AD2d 616 [1984]; *Riley v Board of Educ. of Cent. School Dist. No. 1*, 15 AD2d 303, 305 [1962]).

On appeal, the Transit Authority challenges this rule, suggesting that as a matter of policy, the law should not turn drivers into traffic guards by virtue of a simple, ambiguous movement of the hand (*see generally* Joseph B. Conder, Annotation, *Motorist's Liability for Signaling Other Vehicle or Pedestrian to Proceed, or to Pass Signaling Vehicle*, 14 ALR5th 193). It protests that a driver yielding the right-of-way to another should be able to gesture to the other simply to confirm his or her intention to yield, without incurring liability for another motorist's actions. In addition, the Transit Authority suggests that, even accepting the correctness and viability of this rule,

the duty imposed by such cases as *Yau* (10 AD3d at 654) does not extend beyond the person to whom the gesture was made, so that where the plaintiff did not personally rely on the gesture, proximate cause cannot be established. Finally, the Transit Authority contends that, in any event, under the circumstances here, the actions of its bus driver cannot be considered a proximate cause of the accident.

To determine whether there are circumstances in which a city bus driver with the right-of-way who yields to a police car with lights and siren activated may be liable to a third motorist who, in passing the stopped bus and proceeding properly through the intersection, is struck by the police cruiser, we must analyze the intersecting issues of duty, proximate cause and public policy.

There has long been an ongoing debate concerning the elements of tort liability, particularly the element of duty. That issue was the focus of both Chief Judge Cardozo's majority decision and Judge Andrews's dissent in *Palsgraf v Long Is. R.R. Co.* (248 NY 339, 344, 350 [1928]), and it is a debate that continues today (*see* Weinrib, *The Passing of Palsgraf?*, 54 Vand L Rev 803 [2001]), particularly in the context of a new proposed revision of the Restatement of Torts (*see* Twerski, *The Cleaver, the Violin, and the Scalpel: Duty and the Restatement [Third] of Torts*, 60 Hastings LJ 1 [2008]). Chief Judge Cardozo's classic formulation in *Palsgraf*, that "[t]he risk reasonably to be perceived defines the duty to be obeyed" (*Palsgraf* at 344), emphasizing the link between duty and the foreseeability of harm to a particular person, may have undergone some adjustment in the more recent formulation that "[f]oreseeability of injury does not determine the existence of duty" (*Eiseman v State of New York*, 70 NY2d 175, 187 [1987]). Nevertheless, it remains true that a defendant will be held liable in tort only where that defendant can be said to have breached a legal duty to the plaintiff "to conform to a certain standard of conduct, for the protection of others against unreasonable risks" (Prosser and Keeton, Torts § 30, at 164 [5th ed]), and the question of whether a duty is owed by a defendant to a plaintiff, unlike the factual issues of foreseeability and causation, remains an issue of law to be decided by the court (*Eiseman*, 70 NY2d at 187).

Our discussion must therefore focus first on whether Whaley owed, and breached, a duty to plaintiff.

A motorist always has a duty to operate his or her vehicle with reasonable care (PJI 2:77), which encompasses the duty to see what is there to be seen (PJI 2:77.1). That duty is necessar-

ily owed to everyone else on the roads. However, the duty relied on in *Yau v New York City Tr. Auth.* (10 AD3d 654 [2004], *supra*) and the other cases imposing tort liability where a motorist's gesture to a pedestrian is understood and relied on as an assurance that it is safe for the pedestrian to proceed across the roadway, is actually a separate duty, one that arises only upon the making of the gesture. One New Jersey court quoted Judge Cardozo in justifying the imposition of such a duty: "one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all" (*Thorne v Miller*, 317 NJ Super 554, 560, 722 A2d 626, 629 [1998], quoting *Glanzer v Shepard*, 233 NY 236, 239 [1922]).

While we are sympathetic to the Transit Authority's suggestion that a driver yielding the right-of-way to another should be able to gesture to the other individual simply to confirm his intention to stop and wait for him or her to cross, without incurring liability for another motorist's negligence, we decline its invitation to revisit a rule that is by now well established law in this state: In appropriate circumstances, a driver may incur a duty to another by gesturing that it is safe to cross the road.

We also reject the Transit Authority's suggestion that the gesturing driver's duty does not extend to the third party and that the third party's lack of knowledge of, and therefore nonreliance on, the gesture precludes a finding of proximate cause.

We perceive no logical difficulty in taking a gesturing driver's duty to pedestrians and applying it equally to other drivers. We observe, however, that extending the duty from pedestrians to drivers raises the possibility that the person who is ultimately injured will be a third party, rather than the person who relied on the gesture. For example, when a driver crosses an intersection in reliance on another motorist's gesture and collides with a third vehicle, a passenger in the crossing vehicle, or the driver or passenger in the third vehicle, may be injured. Given that possibility, there is no rationale for limiting the gesturing driver's duty to the gestured-to driver rather than including all those reasonably within the ambit of potential injury: passengers and third parties involved in a collision with the gestured-to driver.

As to the issue of proximate cause, it is well established in the pedestrian cases that such a gesture can only constitute a proximate cause of the accident where the pedestrian relied on the implicit assurance of safety. If the pedestrian understood the driver's gesture merely to indicate that the driver would

pause and allow him or her to pass, rather than as an assurance with regard to any other vehicles on the road, then the gesture cannot be said to have proximately caused the accident (*see Valdez v Bernard*, 123 AD2d at 351). But, may the driver's negligent gesture be treated as a proximate cause of an accident when the party injured in the collision is not the driver who relied on the gesture, but another individual injured in the collision who was unaware of the gesture?

We agree with the motion court that reliance on the part of the injured person is not necessary. When a collision results because one party to the collision relied on a gesture wrongly indicating that the roadway was safe to enter, the gesture is a proximate cause of *the collision*, whether or not the individual who was injured in the collision relied on the gesture.

Despite our rejection of the Transit Authority's arguments, in every other respect we agree with its final argument, and conclude that, under the present circumstances, the material undisputed facts do not permit a claim against the Transit Authority.

We observe that Whaley properly stopped at the intersection despite the green light, because the law required him to stop and yield the right-of-way to a police vehicle with its lights and siren activated (*see* Vehicle and Traffic Law § 1144). While there are some differences in the parties' factual recitations as to the exact location of the bus in relation to the lanes of traffic, none of these raise material issues of fact requiring a trial. Leaving aside for the moment any issues relating to Whaley's gesture to Officer Murray, and limiting our discussion to the situation of the bus itself, there is no validity to plaintiff's assertion that the bus driver acted negligently when he positioned the bus in such a way as to block the view of the other motorists, thereby enhancing plaintiff's risk of harm. A bus that stops in its path in order to allow an emergency vehicle to pass cannot be deemed negligent for doing so simply because other vehicles cannot see around or through it. The law does not impose on large vehicles any more than on other vehicles an extra duty to warn nearby drivers of an oncoming emergency vehicle. Nor is there any legal obligation on the part of a driver yielding to an emergency vehicle to activate his own hazard lights or turn signal as an indicator to motorists coming up behind or alongside him; indeed, it seems highly unlikely in this case that hazard blinkers or turn signals would have successfully warned plaintiff of the police car's presence.

Summary judgment is also not precluded by differing testimony as to exactly where the bus was situated in the roadway. Whaley's testimony was that he did not pull over, but simply stopped in his path to let the police car pass, and that there was less than a full lane open to his left. Plaintiff said that the bus was pulled over and that there was a clear open lane in front of him. The factual dispute is not material, however, since neither stopping the bus in its tracks nor pulling over to the right in an effort to yield the right-of-way to an emergency vehicle constitutes negligent conduct by the bus driver.

Plaintiff's case against the Transit Authority therefore may survive only if the evidence raises the inference that the bus driver's gesture to Officer Murray was a proximate cause of the collision between plaintiff and Officer Murray's cruiser. It does not. Officer Murray's testimony conclusively establishes that he did *not* rely on Whaley's gesture in deciding to proceed into the portion of the roadway where he collided with plaintiff. Rather, Officer Murray relied on the gesture only to the extent of proceeding into the area directly in front of the bus, where he paused for what he believed was 15 to 20 seconds and looked around. After that pause, he did not look in Whaley's direction again, but simply proceeded further into the roadway without first looking down West 10th Street or reactivating his siren. Under those facts, Whaley's gesture was irrelevant to Officer Murray's decision to proceed further into the intersection after pausing. Officer Murray acknowledged that he did not rely further on Whaley's gesture once he had stopped in front of the bus and, indeed, after pausing, he could not reasonably have done so. Even if Whaley's estimate that the pause lasted only three to four seconds were to be accepted as more accurate than Officer Murray's assessment of 15 to 20 seconds, nothing contradicts Officer Murray's statement that before proceeding past the bus he paused and took enough time to look in several directions for the perpetrator he was pursuing. That post-gesture pause, long enough to look in several directions for a robbery suspect, precludes a determination that Officer Murray reasonably continued to rely on the gesture to proceed further into the intersection without checking for oncoming traffic. Indeed, Officer Murray never suggested that when he drove on after pausing in front of the bus, he did so in reliance on Whaley's gesture that it was safe to proceed through the intersection.

Since Officer Murray did not and could not reasonably rely on Whaley's gesture to presume that after pausing, it was still safe

to enter the adjacent lane of traffic, as a matter of law the gesture does not constitute a proximate cause of the accident. No other conduct by the bus driver can be properly characterized as negligent, and accordingly, the complaint as against the Transit Authority must be dismissed.

Accordingly, the order of the Supreme Court, New York County (Donna M. Mills, J.), entered September 26, 2008, which denied defendant New York City Transit Authority's motion for summary judgment dismissing the complaint, should be reversed, on the law, without costs, the motion granted and the complaint dismissed as against defendants New York City Transit Authority and John Doe.

Motion for a stay of trial pending appeal denied as academic.

MAZZARELLI, J.P., ACOSTA, DEGRASSE and MANZANET-DANIELS, JJ., concur.

Order, Supreme Court, New York County, entered September 26, 2008, reversed, on the law, without costs, the motion granted and the complaint dismissed as against defendants New York City Transit Authority and John Doe. Motion seeking stay of trial pending appeal denied as academic.