NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2355
_____

BETANIA TORIBIO, Administratrix of the Estate of
John Joaquin Toribio, Deceased and Individually,

Appellant

v.

PINE HAVEN LLC, d/b/a Pine Haven Campground, and Pine Haven
Camping Resort; DIVERSIFIED INVESTMENTS INC,
a/k/a Diversified Investments, LLC,
a/k/a Diversified Investments Services, LLC

v.

HEATHER MILLER, a/k/a Heather Dioscon; TIMOTHY MILLER;
ANTHONY DIOSCON; MICHELLE WHEELER
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-12-cv-04975)
District Judge: Honorable Joseph E. Irenas
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2016

Before: AMBRO, CHAGARES, and FUENTES, Circuit Judges

(Opinion filed: December 7, 2016)

---

OPINION[*]

---

AMBRO, <u>Circuit Judge</u>

Betania Toribio, Administratrix of the Estate of John Joaquin Toribio, filed suit against Pine Haven, LLC alleging that the drowning death of her son, John, resulted from Pine Haven's negligence. After trial, the jury found that John Toribio was 93% liable for his drowning and that Pine Haven was 7% negligent. This finding resulted in a no-cause-of-action verdict in favor of Pine Haven. A no cause of action results under New Jersey law when a plaintiff is determined to be more than 50% liable; when this occurs, the court will dismiss the action against the defendant. Betania Toribio appeals, arguing that the District Judge exhibited bias and partiality and that he erred in failing to provide the jury with a proper instruction. We disagree and thus affirm.

## I. Background

In August 2010, fourteen-year-old John Toribio spent a weekend with his friend and friend's parents at Pine Haven Campground in Ocean View, New Jersey. The campground's amenities include a swimming lake, playgrounds, and basketball courts. On the night of August 8, 2010, John and several other teenagers took a dip in the campground's man-made swimming lake. The lake was not fenced off, patrolled by lifeguards or other personnel, or monitored by surveillance cameras. The lake was also

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

dark.  Around 8:15 p.m., John started splashing in the water, and his friends lost sight of him.  Not long after, emergency personnel recovered his body and pronounced him dead at the scene.

The decedent's mother, Betania Toribio ("Toribio"), filed suit against Pine Haven arguing that its negligence caused her son's death because it failed to (1) place a fence around the lake, (2) install artificial lighting, (3) install surveillance cameras, and (4) provide roving security throughout the campground.  The jury trial spanned 11 days.  In the end, the jury found both John and Pine Haven negligent and apportioned 93% of the fault to John and 7% of the fault to Pine Haven.  Because John was more than 50% at fault, the Court dismissed the claims against Pine Haven.

Toribio now appeals the District Court's order.  She argues that the District Judge undermined her case and that he should have given the jury an instruction on what is a "duty voluntary assumed."

## II. Discussion

### A.

While federal judges may not assume the role of an advocate, they may question witnesses because judges are more than "mere moderator[s]."  *United States v. Wilensky*, 757 F.2d 594 (3d Cir. 1985); *accord United States v. Beaty*, 722 F.2d 1090, 1092–93 (3d Cir. 1983) (elaborating on "judicial participation in trials"); FED. R. EVID. 614(b) ("The court may examine a witness regardless of who calls the witness.").  In *Liteky v. United States*, the Supreme Court held that "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases,

3

ordinarily do not support a bias or partiality challenge. . . [unless] they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." 510 U.S. 540, 555 (1994).

Toribio alleges two indiscretions: (1) the District Judge's commentary and questioning during the testimony of her fact and expert witnesses amounted to advocacy; and (2) the District Judge mocked her fact and her expert witnesses throughout the trial. To support these allegations, Toribo cites various points in the trial transcript when the District Judge interjected during direct- and cross-examination. These interjections consisted of questions and comments both in front of and in the absence of the jury. While the trial transcript is vast, the District Judge's questions or comments in the jury's presence include phrases such as "I mean, it could be a hundred acres or 200 acres," "Ask proper questions," and "You weren't – you weren't paying attention to whether there were signs anywhere, were you?" Transcript of Record at 202, 457, 753, *Toribio v. Pine Haven, LLC*, No. 12-4975 (JEI)(JS) (D.N.J. May 14, 2015). Outside the jury's presence during a hearing to qualify experts, the Judge stated "You're flabbergasted. I'm trying to keep this case from turning into a nightmare and I'm going to let the jury decide it, but quite candidly, I think there's going to be a big chance if they come out for the plaintiff, I'm going to set it aside, based on [the witness's testimony]." Tr. at 383.

When confronted with allegations of bias, we consider factors such as the number of times the judge interfered in the trial, the extent of that interference, and the degree to which the judge exhibited partisanship. *See Beaty*, 722 F.2d at 1093; *Wilensky*, 757 F.2d at 598–599; *see also United States v. Ottaviano*, 738 F.3d 586, 597 (3d Cir. 2013).

4

After reviewing the record, we disagree that the District Judge demonstrated a bias or partiality that would have changed the jury's verdict. For example, we disagree that he was acting as an advocate. When the District Judge questioned or interrupted the witnesses, he did so to clarify the testimony. Indeed, at one point during the trial Toribio's counsel thanked the Judge for "clarification." Tr. at 249. Additionally, his interjections are found in only a small part of the trial transcript, and some of his responses related to evidentiary objections of the parties. The interruptions mentioned were also not partial to one party, as they were of counsel to both sides. (Toribio also cites to questions and comments made during discussions outside the jury's presence to demonstrate bias and partiality; however, because the jurors were not present, these discussions could not have influenced them.)

To Toribio's second point—that the District Judge mocked her fact and expert witnesses—she has not demonstrated bias or partiality. Even if, at times, the District Judge appeared frustrated or condescending, that is not enough to establish bias or prejudice. *See, e.g.*, *United States v. Liteky*, 510 U.S. 540, 555–56 (1994) (noting that impatience, dissatisfaction, anger, or sternness do not establish bias or partiality). While it was not advisable for the Judge to make these comments, they appeared to exhibit mere frustration and not bias.

We discern in this context no judicial bias or partiality.

**B.**

5

Toribio argues also that the District Judge failed to instruct the jury properly, specifically, that the jury should have been charged on "Duty Voluntarily Assumed." In New Jersey, state courts impose "duties of reasonable care on defendants who voluntarily undertake services." *Ceneviva v. Homes*, No. 09-2452, 2011 WL 2470596, *1, *3 (D.N.J. June 20, 2011) (citing *Thorne v. Miller*, 722 A.2d 626, 629 (N.J. Super. Ct. L. Div. 1998)). For example, a person voluntarily assumes a duty when voluntarily holding a ladder for another person. *See Ceneviva*, 2011 WL 2470596, at *3 ("reliance by the dependent party is foreseeable, the risk of harm is serious, and the party assuming the duty could reasonably prevent foreseeable harm by exercising reasonable care"). A driver also assumes a duty when he waves to another driver in order to facilitate safe passage. *See Thorne v. Miller*, 722 A.2d, 626, 628 (N.J. Super. Ct. L. Div. 1998). Absent these efforts to aid others, an ordinary person would not otherwise owe another a duty. Toribio requested that the District Court instruct the jury on this type of duty.

Here, however, Pine Haven already owed John Toribio a duty because the campground had a preexisting duty to exercise reasonable care to all guests. It was not voluntary. Instead of giving the "duty voluntarily assumed" charge, the District Judge instructed the jury on all of the elements of Toribio's liability claim, including the duty owed, how it could be breached, and how harm could be caused. He instructed the jury that the "property owner owes a duty to exercise reasonable care . . . to persons who . . . are allowed to have a right to be on the premises." *See* Tr. at 1351. This was a correct instruction.

6

*    *    *    *    *

In summary, the conduct of the District Judge did not prejudice Toribio and the instruction to the jury was not incorrect.  Thus we affirm.