## Elgin, Joliet & Eastern Railroad Company v. Bella B. Hoadley, Administratrix.

### Gen. No. 4,541.

1. PREPONDERANCE OF EVIDENCE—*mere number of witnesses does not determine.* The mere number of witnesses testifying for or against a controverted fact, does not determine where the preponderance lies.

2. RINGING OF BELL—*when statute requiring, applies.* The statute requiring a railroad company to cause a bell to be rung or a whistle sounded at a distance of eighty rods from the place where the railroad crosses any public highway and keep the same ringing or whistling until the highway is reached, applies to streets in an incorporated city or village.

3. RINGING OF BELL—*failure of, negligence.* It is negligence upon the part of a railroad company to run its engine over a crossing used by the public without either the ringing of a bell or the sounding of a whistle.

4. RINGING OF BELL—*what essential to recover for failure to.* In order to recover for the negligence of a railroad company in running its engine over a crossing used by the public without the ringing of a bell or the sounding of a whistle, it must be shown that such failure was the proximate cause of the injury.

5. CONTRIBUTORY NEGLIGENCE—*what will be considered in connection with question of.* In determining whether one who has lost his life by an accident was guilty of contributory negligence, the natural instincts of self-preservation may be considered.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of Will County; the Hon. Dorrance Dibell, Judge, presiding. Heard in this court at the April term, 1905. Affirmed. Opinion filed August 1, 1905.

Knapp, Haynie & Campbell, and J. L. O'Donnell, for appellant.

Donahoe, McNaughton & McKeown, for appellee.

Mr. Justice Farmer delivered the opinion of the court.

This suit was brought by appellee as administratrix to recover damages for the death of her husband, George E. Hoadley, alleged to have been caused by the negligence of appellant. Plaintiff below recovered a verdict and judgment for $4,000, from which the defendant has appealed. Deceased was a lamp trimmer in the employment of an electric light company, and on January 4, 1902, while at work on a lamp in Maple street, in the city of Joliet, at a place where it is crossed by several tracks of appellant, he was struck by a moving engine on appellant's railroad and so seriously injured that he soon after died. The lamp where the injury occurred was about midway between the north and south lines of Maple street, which ran in a northeasterly and southwesterly direction. It was an arc lamp hung from poles, one of which stood near the north line of the street, and the other well toward the south line. It was raised and lowered by a windlass from the north pole. When it was lowered to be trimmed, it rested on the surface of the ground seven feet and three-fourths of an inch east of the east rail of the track west of it, and something like ten feet west of the west rail of the track nearest to it on the east. There were several tracks east and several west of the lamp, and it will be seen from the measurements given that the space between the rails of the tracks on the east and west sides of the lamp was about seventeen feet. The accident occurred about 8:30 in the morning. Deceased had, by means of the windlass at the north pole, lowered the lamp to the street and was standing in a stooping position between it and the track on the west

side, with his back toward the track.  On the track next east of the lamp and just in front of him were two engines coupled to a heavy freight train, the engines standing on the street crossing just opposite deceased.  The evidence shows that just about the time the accident occurred, these engines started up and a fog of steam and vapor was escaping from the cylinder cocks of one or both of them, enveloping deceased and all objects immediately in their vicinity, so as to obscure to some extent objects in the fog and vapor from the view of persons outside of it, and necessarily obstruct the view of deceased.  While Hoadley was engaged trimming the lamp under those conditions, a switch engine with a few cars attached came down from the north on the track immediately west of him, and the pilot beam, which according to the proof projected from twenty-four to twenty-six inches beyond the rail, struck and so seriously injured him as to cause his death.  Deceased had been in the employment of the electric light company since September previous to his injury, during which time he had trimmed the lamp in question every day and was, therefore, familiar with the street and the railroad tracks crossing it at the place where the injury occurred.  The proof also shows that trains and engines were very frequently passing over the street at this place, back and forth, and it was argued by appellant that deceased knew the place to be one of great peril and that it was contributory negligence on his part to have placed himself in the position he was in at the time he was struck by the passing engine.  It is contended that if deceased had stood on the opposite or east side of the lamp there was ample space between it and the track to have permitted him to do his work without being near enough a track to have been struck by a passing engine, and that knowing the conditions, he voluntarily exposed himself to the position of greater peril, and, therefore, cannot recover.  The declaration among other things charged that there was no bell rung or whistle sounded on the engine which caused the injury as it approached the street crossing, and we think

the rights of the parties depend upon whether or not such signals were given. Upon this question the evidence is conflicting. The engineer and fireman on the engine that struck deceased, and other employes of appellant, testified either that the whistle was sounded or the bell rung, or that both the whistle was sounded and the bell rung, before the crossing was reached. More witnesses in number testified to one or the other of these signals being given than testified that no signals were given. Some of appellant's testimony, however, was to the effect that the whistle was sounded a considerable distance before, but was not kept sounding till the crossing was reached. Three wholly disinterested witnesses testified that no bell was rung or whistle sounded except that one of them heard a whistle in appellant's yard so far away from the crossing that they could not see the engine nor tell whether the whistle came from the engine that caused the injury. Two witnesses were together in a buggy and had intended to drive east across the track where the injury occurred. The two engines standing on the track, east of the lamps, prevented their passing over, and while they stopped as they were approaching from the west side, the engine came down from the north and both these witnesses testify that no whistle was sounded or bell rung for the crossing. They give their reasons for having it impressed upon their minds at the time. Mr. Brockway, the owner of the horse they were driving, testified he remembered distinctly that the bell did not ring nor the whistle sound, because neither he nor any other man could have held his horse if such signals had been given, and that he remarked to Mr. O'Connell who was with him at the time, the fact that no whistle was sounded nor bell rung. Mr. O'Connell positively swears no signal was given by whistle or bell, and says he remembers Mr. Brockway swearing about it as the engine came up. A Mr. Young also testified he was looking at the engine as it came down the track and that no bell was rung or whistle sounded before it reached the crossing. The engineer on one of the engines on the east track saw the en-

gine strike deceased, and just as it did so, blew his signal
for the engine to stop. There is some proof also to the
effect that the engine that caused the injury immediately
blew the signal to stop, and it did in fact stop a short dis-
tance from where the accident occurred. The jury found
that no signals were given as the engine approached the
crossing. There was no special finding to this effect, but
the instructions given by the court made plaintiff's right
to recover dependent upon whether the jury believed from
the evidence that the signals were not given, and while
more witnesses testified to some or both of the signals being
given than testified they were not given, yet the situation
of the witnesses at the time and their reasons and opportu-
nities for observing and remembering the facts appear from
the evidence to be such that we cannot say the finding of
the jury is not supported by the weight of the testimony.
The jury might very properly attach great weight to the
testimony of witnesses who were observing at the time
whether signals were being given and had special reasons
for impressing the fact on their memories. Assuming that
the weight of the proof shows no signals were given by
those in charge of the engine as it approached the cross-
ing, we are of opinion the mere fact that deceased might
have selected a safer place to have done his work will not
bar a recovery. He was not on the track of appellant, but
was in a public street where he had a right to be, and
where he had a right to assume appellant would give the
signals required by law to be given before attempting to
pass over the crossing. Undoubtedly he must have known
that an engine was liable to pass over the track most any
time, but he had a right to assume appellant's servants in
charge of the engine would comply with the duty the law
imposed upon them, either to sound the whistle or ring
the bell as they approached the crossing, and continue
either to whistle or ring the bell until they had reached it.
If it be said that by placing himself so near the track that he
was liable to be struck by a passing engine he assumed the
risk of being thus injured, it cannot be said that he assumed

the peril of appellant failing to give the signals required by law to warn those in the public street of the approach of the engine. The evidence shows the approaching engine was running some five to eight miles per hour and was making the usual noise attending the passage of an engine over the railroad track, but the noise of the starting up of the two engines on the track just east of deceased and the escaping steam from their cylinder cocks might well have prevented his hearing the rumbling of the engine and cars over the track west of him when he could have heard the ringing of a bell or the sounding of a whistle.

The statute requiring the railroad company to cause a bell to be rung or whistle sounded at the distance of eighty rods from the place where the railroad crosses any public highway, and keep the same ringing or whistling until the highway is reached, applies to streets in an incorporated city or village. M. & O. R. R. Co. v. Davis, 130 Ill. 146. The proof shows that the street crossing in question was one much used by the public, and that it was negligence for appellant to run its engine over the crossing without giving the statutory signals cannot be denied. Galena & Chicago Union R. R. Co. v. Loomis, 13 Ill. 548; T., H. & I. R. R. Co. v. Black, 18 Ill. App. 45; St. L., J. & C. R. R. Co. v. Terhune, 50 Ill. 151; I. C. R. R. Co. v. Gillis, 68 Ill. 317. Proof alone, however, that the signals were not given would not justify a recovery. Before a recovery can be had on the ground that the signals were not given, it must appear from the evidence that the failure to give the signals caused the injury. The proof in this case warranted the conclusion that the statutory signals were not given, and it then became a question of fact for the jury to determine whether such failure and neglect to give the signals misled the deceased and thereby caused his injury. C. & A. R. R. Co. v. Corson, 198 Ill. 98. There is no proof tending to show deceased knew the engine was approaching, but on the contrary, we think the justifiable inference from the testimony is that he did not know of its approach until he was struck. The natural instincts of all sane men

E., J. & E. R. R. Co. v. Hoadley.

to preserve life and avoid injury and consequent pain and suffering, may properly be taken into consideration in determining whether a person was guilty of negligence under certain circumstances. The presumption is that such a person standing so near a railroad track as to be injured by a train passing over it, would, if he were warned and knew of the approach of an engine, regard the warning and seek a place of safety. Great Western R. R. Co. v. Geddis, 33 Ill. 305; I. C. R. R. Co. v. Nowicki, 148 Ill. 29; C., C., C. & St. L. Ry. Co. v. Keenan, 190 Ill. 217. The distinction between this case and those cited in appellant's brief is that in those cases there was no statutory duty imposed upon the railroad company to give warning signals to the party injured of the approach of an engine or train, such as was required in this case. In B. &. O. S. W. Ry. Co. v. Then, 159 Ill. 535, it is said in the opinion of the Appellate Court, which was adopted by the Supreme Court, that a person at a public crossing of a highway and railroad had a right to rely upon the performance of the duty imposed upon the railroad company by an ordinance to give warning of the approach of a train by continuously ringing the bell while approaching the crossing. So here deceased had a right to rely upon the statutory signals being given of the approach of the engine, and we are not prepared to say the weight of the evidence fails to show that they were not given, and that the injury was the proximate result of such failure.

It is claimed appellee's first instruction was so worded as to be likely to be misunderstood by the jury. We have carefully read the instruction and are of opinion it is not subject to the criticism made of it. The judgment of the Circuit Court is, therefore, affirmed.

*Affirmed.*

Mr. Justice DIBELL having heard this case in the court below, took no part in its consideration here.