KATHERINE S. MANN, as Special Adm'r of the Estate of Brooks T. Mann, Deceased, Plaintiff-Appellant, v. PRODUCER'S CHEMICAL COMPANY *et al.*, Defendants-Appellees (Romaus Mesa, Defendant).

First District (2nd Division)   No. 1—01—2047

Opinion filed February 15, 2005.—Rehearing denied May 17, 2005.

Rothschild, Barry & Myers, of Chicago (John J. Coffey and Kevin J. Moore, of counsel), for appellant.

Clausen, Miller, P.C., and Nolan & Nolan, P.C., both of Chicago (Michael J. Nolan, James T. Ferrini, Melinda S. Kollross, and Paul V. Esposito, of counsel), for appellees.

JUSTICE GARCIA delivered the opinion of the court.

This is a wrongful death and survival action resulting from an incident in which the decedent, Brooks Mann, was struck by a vehicle driven by Romaus Mesa while he was crossing Route 59 in Barrington, Illinois, after truck driver James Bartow, an employee of Producer's Chemical Company (PCC), allegedly signaled to Mann that it was safe to cross the street. Mann ultimately died of the resultant injuries.

The plaintiff, Mann's mother, brought a four-count suit against Mesa, Bartow and PCC. Counts II and IV are directed solely at Mesa, who is not a party to this appeal. Two counts are directed at PCC and Bartow, count I for wrongful death and count III, a survival action. The two counts are based on the allegation that Bartow signaled to Mann that it was safe to cross the street and that Bartow's signal was a voluntary undertaking, negligently performed.

PCC and Bartow moved for summary judgment based on the testimony of witnesses elicited in the discovery depositions. On May 23, 2001, the trial court granted the motion, finding the plaintiff could not show, as a matter of law, that PCC and Bartow proximately caused Mann's injuries. For the following reasons, we affirm.

## BACKGROUND

On September 2, 1997, Mann and another high school student, Audrey Fox, were walking home from Barrington High School. Fox was walking ahead of Mann. The accident occurred where Route 59 intersects with Caitlow Court, right next to the railroad tracks. There is no pedestrian crosswalk at this intersection.

Fox crossed Route 59 and stopped to sit on a wall on the other side of the street. She "looked back and saw a truck come to a stop just north of the tracks, and saw [Mann] begin to cross the street." Mann crossed Route 59 in front of the truck. According to Fox, "as [Mann] was in front of the truck [she saw] the truck driver wave at him." Fox testified that she saw Bartow, the truck driver, wave Mann through and that Mann was looking at Bartow when Bartow signaled. "The truck [driver] waved him through and he went through." Fox also testified that she did not see Bartow look around to see if it was safe before he signaled to Mann. After Bartow's wave, Fox saw Mann continue his path across the street. As soon as Mann stepped past the truck, he was struck by a speeding vehicle driven by Mesa, which came around the truck through a yellow-marked, no-drive zone.

Gail Dixon was in the second car behind Bartow's truck. Traffic was at a full stop, "just lined up." She first observed Mann as he approached Route 59 from what appeared to be a side street. As Mann approached the street, he "made a pause when he was looking toward

the cars that were stopped. He did look toward us, I believe, and it was my feeling that he saw that everyone was stopped. I don't know—he didn't stop and wait, but he did pause." As he entered the street, "he was moving quickly." She lost sight of Mann as he passed in front of Bartow's truck.

Pamela Kunz was in the car directly in front of Bartow's truck, headed in the same direction. She saw Mann through her rearview mirror cross behind her car. "[H]e wasn't walking, he wasn't running, like a kid would go across the street fast." She next saw Mann through her side-view mirror, saw the other vehicle coming up fast, and "knew the kid was going to get hit." She "never saw the truck motion him across."

Terrence Niven was driving the first car headed southbound on Route 59 in the traffic line waiting at the red light. The first time he saw Mann was when he, Mann, emerged from the line of traffic, immediately prior to being struck by Mesa's vehicle. He never saw the driver of PCC's "tractor-trailer" prior to the impact.

Bartow testified that he was stopped at a light just north of the railroad tracks and was facing southbound on Route 59. While he was stopped there, he saw Fox pass in front of his truck, cross the street, and sit on the wall on the other side. When Bartow first saw Mann, Mann was in front of Bartow's truck. Bartow saw Mann "running" across the street at the same time he saw the green arrow indicating left-turning southbound traffic could proceed. Also at the same time, Mesa's vehicle came around the truck, through the yellow-marked, no-drive zone, headed for the left-turn lane that had the green arrow. Bartow testified that he did not signal to Mann, but he did reach for his air horn cord over his left shoulder when he saw that Mann would be hit by Mesa's vehicle. Additionally, Bartow testified that he never made eye contact with Mann, nor did he see Mann look in his direction.

On March 9, 2001, PCC and Bartow filed a motion for summary judgment, supported by exhibits A through N, which included the discovery depositions of Fox, Bartow, Dixon, Kunz, and Niven, among others. On May 23, 2001, the trial court granted the motion based on the pleadings and the depositions, finding the plaintiff could not prove proximate cause because Mann continued to cross the street without doing anything different from what he had been doing before he supposedly saw Bartow "wave." In reaching its ruling, the trial court addressed the only testimony regarding the alleged wave by Bartow: that of Fox, who stated that Mann just went on crossing the street when the truck driver waved at him. Regarding Fox's testimony, the trial court stated:

"And what [Fox's testimony] means is this: It's, yes reasonable inferences could be made but based on that particular statement; in order to make that reasonable inference, it would have to be pure speculation on the jury's part because nobody can say when [Mann] was looking that he relied in any way on [Bartow's gesture], if in fact the gesture was made and if [the jury] came to that conclusion that the gesture was a wave, what [Fox] says is [Mann] didn't do anything different. He just walked across the street. He continued doing what he was doing. And in order to get to that point, it would be pure speculation and the case law says that speculation isn't good enough. So based on that, the motion for summary judgment as to Producer's Chemical and James Bartow will be allowed."

The plaintiff appealed pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

## ANALYSIS

The plaintiff argues the trial court erred in entering summary judgment in favor of PCC and Bartow because the trial court improperly resolved, as a matter of law, the "factual" question of whether Mann relied on Bartow's signal in crossing the street.

PCC and Bartow contend summary judgment was appropriate because: (1) Bartow owed no duty of care to Mann; (2) Mann failed to create a genuine issue of material fact as to whether Bartow breached a duty of care; and (3) Mann failed, as a matter of law, to prove the alleged negligence of Bartow was a proximate cause of Mann's accident. Because we affirm the trial court's ruling and likewise find that the plaintiff cannot prove proximate cause, we need not address the other issues raised on appeal. *McCullough v. Gallaher & Speck*, 254 Ill. App. 3d 941, 948, 627 N.E.2d 202 (1993), citing *Kennedy v. Joseph T. Ryerson & Sons, Inc.*, 182 Ill. App. 3d 914, 918, 538 N.E.2d 748 (1989) (the plaintiff must establish the necessary element of proximate cause otherwise he has not sustained his burden of making a *prima facie* case and summary judgment is proper).

■ This appeal challenges the propriety of summary judgment and therefore will be reviewed *de novo. McCullough*, 254 Ill. App. 3d at 948; *Retzler v. Pratt & Whitney Co.*, 309 Ill. App. 3d 906, 912, 723 N.E.2d 345 (1999). Summary judgment is proper when the pleadings, depositions, affidavits, and admissions on file show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). "Where a defendant moves for summary judgment, the plaintiff has an affirmative duty to present facts and evidence to establish the existence of a cognizable cause of action. [Citation.] Summary judgment can be

granted only where the right of the moving party is clear and free from doubt." *Kennedy*, 182 Ill. App. 3d at 918. Factual disputes cannot be decided as a matter of law (*McCullough*, 254 Ill. App. 3d at 948); therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact (*Retzler*, 309 Ill. App. 3d at 913).

■ In a negligence action, such as this one, the plaintiff is required to prove: (1) the defendant owed a duty of reasonable care to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injury. *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 795, 721 N.E.2d 614 (1999); *Wojtowicz v. Cervantes*, 284 Ill. App. 3d 524, 531, 672 N.E.2d 357 (1996). The issue of proximate cause is usually a question of fact for a jury. *Wojtowicz*, 284 Ill. App. 3d at 531. However, a plaintiff must demonstrate proximate cause otherwise he has failed to establish a *prima facie* case and a directed verdict is proper. And, "where the pleadings, depositions, and other evidence before the court show that at trial a verdict would have to be directed, entry of summary judgment is proper." *Kennedy*, 182 Ill. App. 3d at 918.

Proximate cause has two components: cause in fact (a matter of reasonable certainty) and legal cause (a question of foreseeability). *First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 257-58 (1999). Cause in fact exists where there is a reasonable certainty that a defendant's acts caused the injury or damage. "A defendant's conduct is a cause in fact of the plaintiff's injury only if that conduct is a material element and a substantial factor in bringing about the injury. [Citation.] A defendant's conduct is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred. [Citation.]" *First Springfield*, 188 Ill. 2d at 258.

■ In this case, the plaintiff rests her claim on section 324A of the Restatement (Second) of Torts, which states:

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of such harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the

third person upon the undertaking." Restatement (Second) of Torts § 324A (1965)[1] .

The plaintiff appears to rely specifically on subsection (c) of section 324A of the Restatement (Second) of Torts.

Under a voluntary undertaking theory, to establish proximate cause of the injury, the cause-in-fact component requires a showing that a plaintiff relied on the defendant's conduct. Restatement (Second) of Torts § 324A(c) (1965). As applied to this case, section 324A(c) required the plaintiff to show that Mann relied on Bartow's wave[2] in continuing to cross the street without checking for other traffic at the point he was struck by Mesa's vehicle. This reliance is part of the cause-in-fact component of proximate cause because, without it, there is no reasonable certainty that the "defendant's acts caused the injury or damage." *First Springfield*, 188 Ill. 2d at 258. That is, the showing of reliance by Mann is necessary to establish that Bartow's act of waving Mann through "is a material element and a substantial factor in bringing about an injury if, absent that conduct, the injury would not have occurred." *First Springfield*, 188 Ill. 2d at 258. If there is insufficient evidence that Mann relied on Bartow's wave, then Bartow's wave is not "a material element and a substantial factor in bringing about [the] injury." *First Springfield*, 188 Ill. 2d at 258.

We examine the record in the light most favorable to the plaintiff to determine whether she made out a *prima facie* case of negligence by sufficiently demonstrating that Mann's venture past Bartow's truck without checking for other traffic was proximately caused by Mann's reliance on Bartow's alleged negligent act of waving him through. See *Boucher v. Grant*, 74 F. Supp. 2d 444, 452 (N.J. 1999), quoting *Isaacs v. Larkin Electric Co.*, No. 16948 (Ohio Ct. App. September 4, 1998) (" 'Only with such reliance can any act of negligence in signaling be considered a proximate cause of the plaintiff's injuries' "); see also *Dace v. Gilbert*, 96 Ill. App. 3d 199, 201 (1981) (signaling driver not

---

[1]The Restatement's voluntary undertaking principle was implicitly adopted by Illinois courts in *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 210-11, 399 N.E.2d 538 (1979) (*Jakubowski v. Alden-Bennett Construction Co.*, 327 Ill. App. 3d 627, 639, 763 N.E.2d 790 (2002)), and was unequivocally accepted by the Illinois Supreme Court in *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 605 N.E.2d 557 (1992) (*Kavales v. City of Berwyn*, 305 Ill. App. 3d 536, 545-46 (1999)).

[2]For the purposes of this appeal, this court will assume *arguendo* that Bartow waved and that Bartow did so without checking traffic first. *McCullough*, 254 Ill. App. 3d at 948 ("[w]hen deciding a summary judgment motion, the court must construe the evidence strictly against the movant and liberally in favor of the opponent").

proximate cause of accident where waved driver did not rely on signal); *Ring v. Poelman*, 240 Va. 323, 327, 397 S.E.2d 824, 826 (1990) (finding that signaling driver was not the proximate cause of collision when waved driver stated that he was not relying on that hand signal in entering occupied travel lane); *Shank v. Government Employees Insurance Co.*, 390 So. 2d 903 (La. App. 1980) (finding that pedestrian did not rely on hand gesture where evidence showed that pedestrian passed safely in front of the defendant's vehicle, paused, and then attempted, unsuccessfully, to cross the next lane).

▪ It is well settled that liability cannot be predicated upon surmise or conjecture as to the cause of an injury, but liability can be established where there is a reasonable certainty that defendant's actions caused the injury. *Wiegman*, 308 Ill. App. 3d at 795; *Wojtowicz*, 284 Ill. App. 3d at 532. The "reasonable certainty" need not be shown by direct evidence; rather, it may be established by inference from circumstantial evidence. *Wojtowicz*, 284 Ill. App. 3d at 532; *McCullough*, 254 Ill. App. 3d at 949; *Wiegman*, 308 Ill. App. 3d at 795.

▪ To be sufficient in a civil action, circumstantial evidence need not exclude all other possible inferences or support only one logical conclusion (*Wojtowicz*, 284 Ill. App. 3d at 532), but liability may be established when the facts and circumstances, in the light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury (*Wiegman*, 308 Ill. App. 3d at 795; *McCullough*, 254 Ill. App. 3d at 949). Notably, a fact is not "established by circumstantial evidence unless the circumstances are of such a nature and so related to each other that it is the only probable, not merely possible, conclusion that can be drawn therefrom." *Wiegman*, 308 Ill. App. 3d at 796. All reasonable inferences must be drawn in favor of the nonmoving party (*Delaney Electric Co. v. Schiessle*, 235 Ill. App. 3d 258, 263, 601 N.E.2d 978 (1992)), but where, "from the proven facts[,] the nonexistence of the fact to be inferred [is] just as probable as its existence, then the conclusion that it exists is a matter of speculation, surmise, and conjecture, and the trier of fact cannot be allowed to draw it." *Wiegman*, 308 Ill. App. 3d at 795-96.

It is therefore incumbent upon us to determine whether the existence of the fact to be inferred, Mann's reliance on Bartow's wave, is "the only probable, not merely possible, conclusion that can be drawn" from the testimony presented to the trial court. If the nonexistence of "reliance" is just as probable as its existence, "then the conclusion that it exists is a matter of speculation, surmise, and conjecture, and the trier of fact cannot be allowed to draw it." *Wiegman*, 308 Ill. App. 3d at 795-96. If the existence or nonexistence of reliance by Mann on Bartow's wave is equally probable, then the plaintiff is unable to

establish that there is a reasonable certainty that the defendant's acts caused the injury and, therefore, has failed to establish proximate cause. *Wiegman*, 308 Ill. App. 3d at 795. See *McCoy v. McCoy*, 227 Ill. App. 3d 244, 248, 591 N.E.2d 244 (1992) (the plaintiffs failed to establish the factual or cause-in-fact component of proximate cause and therefore summary judgment was proper). The plaintiff must demonstrate proximate cause by showing that Mann relied on Bartow's "wave" in traversing the street at the point of impact with Mesa's vehicle, as part of her *prima facie* case, to withstand the defendants' motion for summary judgment. *Kennedy*, 182 Ill. App. 3d at 918.

The plaintiff claims on appeal "there is a genuine dispute of material fact—whether [Mann] relied on the signal—and there is abundant evidence that he did."

There is no direct evidence on the question of the reliance by the plaintiff's decedent because Mann never regained consciousness following the accident. In support for her claim that "[e]yewitness testimony by the other witnesses *** tends to show that [Mann] relied on the signal," the plaintiff references the testimony of Gail Dixon, Pamela Kunz and Terrence Niven. Yet, it is clear from the record that there is no support to be found in the testimony of any of these witnesses that Mann relied on the alleged wave by Bartow in continuing his path across the street.

Gail Dixon testified that Mann "pause[d]" before he entered the street but once he entered the street, "he was moving quickly." Gail Dixon lost sight of Mann after he passed in front of Bartow's truck, as her car was behind Bartow's truck. There was no testimony from Gail Dixon that Mann ever changed his manner of crossing the street. Pamela Kunz, in a car directly in front of Bartow's truck, testified that Mann went "across the street fast." She "never saw the truck motion him across" and never testified that Mann ever changed his manner of crossing the street. Terrence Niven, the first southbound car stopped at the red light in front of Kunz's car, testified that he first saw Mann when Mann emerged from the line of traffic, immediately before being hit by the other vehicle. Niven was unable to provide any testimony as to Mann's manner of crossing the street before he was struck by Mesa's vehicle.

Rather than support the plaintiff's claim that Mann "relied" on Bartow's wave in crossing the street, the testimony of each of these witnesses reveals nothing more than what the trial court found as an undisputed fact: that Mann, in crossing the street, did *nothing different after* Bartow allegedly "waved" than he did *before* the alleged "wave."

Accordingly, whether the plaintiff has established proximate cause as part of her *prima facie* case turns on the testimony of Audrey Fox, as the trial court properly found. The testimony by Audrey Fox as to the timing of the "wave" by Bartow, in relation to Mann's position in the street, was that Mann "was crossing in front of the truck, [when she saw] the truck driver wave at him." Fox testified consistently that Mann was in the "center lane" when the wave occurred, that is in front of Bartow's truck, which was southbound. The right lane was for right turns only; the left lane was for left turns only. There was also this exchange between Fox and defense counsel:

"Q. Did [Mann] do anything when the truck driver waved to him?

A. No. He just went on crossing."

Based on Fox's testimony that when Mann "saw" Bartow's wave he did not do anything different, but rather continued doing what he was doing, that is, crossing the street, the trial court granted summary judgment because it found that based on the only testimony shedding any light on the issue of reliance, it was no more probable that Mann relied on the wave than that he did not.

The plaintiff argues that because Mann continued on his path across the street after Bartow's wave, without stopping, hesitating, or independently checking traffic, this shows reliance, especially in light of Mann's own observations of traffic as established by Gail Dixon's testimony that Mann appeared to check southbound traffic when he "pause[d]" before beginning to cross the street. While this is a possible inference that could be drawn, it is at least equally possible that Mann did not see Bartow's signal or, if he did, he continued on his path across the street because he had checked traffic prior to entering the street and "everyone was stopped." Furthermore, walking past the truck without checking traffic again was reasonable based on the yellow markings of the lane, indicating a no-drive zone, immediately north of the lane Mann was about to enter after passing Bartow's truck. Based on the only evidence regarding reliance, the plaintiff cannot show more than a mere possibility that Mann relied on Bartow's wave and, thus, there is no reasonable certainty that Bartow's wave caused the injury. *Wiegman*, 308 Ill. App. 3d at 795-96.

Although Fox testified that Mann was looking in Bartow's direction when Bartow waved, that is not evidence that Mann saw Bartow's wave. See *Northern Illinois Gas Co. v. Vincent DiVito Construction*, 214 Ill. App. 3d 203, 215, 573 N.E.2d 243 (1991), citing M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 602, at 301 (5th ed. 1990) (admissible testimony from a witness is limited to personal knowledge of matters perceived through his own senses).

This is especially true where, according to Fox's testimony, Mann was already in front of Bartow's truck when Bartow waved, suggesting that Mann, in looking in Bartow's direction, was merely keeping the truck in his line of vision to ensure that the truck did not move. That Mann did not alter his path or pace across the street after Bartow's "wave" can just as easily be explained that, having made his own assessment of the safety to cross as southbound traffic was at a full stop because of the red light, and being fully aware of the no-drive zone to the north of the left-turn lane he was about to enter after crossing in front of Bartow's truck, Mann determined there was no reason to check further for traffic as one would not anticipate a driver recklessly driving through the no-drive zone.

We also reject the plaintiff's claim that if Mann was already in front of the truck when Bartow "waved," this makes it "circumstantially more reasonable that [Mann] would have taken the wave to mean something more than the defendants would not move their truck; he would have taken it to mean the way was clear." Once again, if Mann was already in front of Bartow's truck when the "wave" occurred, it is equally likely that Mann either never saw the wave or disregarded the wave as he had already made his own judgment as to the safety of crossing and proceeded accordingly. This is consistent with the plaintiff's own assertion "that the wave and the impact were almost instantaneous."

Although the evidence is limited on this point, we do note that Mann was headed home from high school at the time of the accident. Fox, a fellow classmate at school, had already crossed the same intersection and was sitting on a wall on the opposite side of the street. There is no evidence that Mann was unfamiliar with the intersection and would thus rely on "the direction of an adult" to cross as the plaintiff suggests. There was also no evidence that Bartow had "waved" Fox through the intersection, as Fox testified Bartow did for Mann.

In response to the defendants' position that there are other reasonable alternative inferences to explain Mann's actions, the plaintiff argues that summary judgment is inappropriate in situations where reasonable minds can differ on the interpretation of the signal. In support of this argument, the plaintiff cites: *Boucher v. Grant*, 74 F. Supp. 2d 444 (N.J. 1999); *Cunningham v. National Service Industries, Inc.*, 174 Ga. App. 832, 838, 331 S.E.2d 899, 904 (1985); *Barber v. Merchant*, 180 A.D.2d 984, 580 N.Y.S.2d 573 (1992); and *Johnson v. Bi-State Development Agency*, 793 S.W.2d 864 (Mo. 1990). However, these cases are not instructive on the issue before us. The question before us is not whether Bartow's signal meant either that it was safe to cross to

the other side of the street or that Bartow would not move his truck and thus it was safe to pass in front of it. Rather, the question we must answer is whether there was a sufficient showing that Mann relied on Bartow's wave to establish proximate cause. As the court in *Boucher* noted, " 'Only with such reliance can any act of negligence in signaling be considered a proximate cause of the plaintiff's injuries.' " *Boucher*, 74 F. Supp. 2d at 452, quoting *Isaacs v. Larkin Electric Co.*, No. 16948 (Ohio App. September 4, 1998). The issue before us concerns the sufficiency of the evidence on the proximate cause element of the plaintiff's *prima facie* case. This is not a case where the evidence as to proximate cause is conflicting and therefore properly left to the trier of fact to resolve. See *Boucher*, 74 F. Supp. 2d at 451; *Cunningham v. National Service Industries*, 174 Ga. App. 832, 331 S.E.2d 899 (1985); *Barber v. Merchant*, 180 A.D.2d 984, 580 N.Y.S.2d 573 (1992); *Johnson v. Bi State Development Agency*, 793 S.W.2d 864 (Mo. 1990). Thus, the cases relied on by the plaintiff for the proposition that the meaning of the signal is for the trier of fact to decide are not instructive.

The plaintiff cites four additional cases (*Elgin, Joliet & Eastern R.R. Co. v. Hoadley*, 122 Ill. App. 165 (1905); *Chicago Junction Ry. Co. v. McAnrow*, 114 Ill. App. 501 (1904); *Chicago & Alton R.R. Co. v. Adler*, 129 Ill. 335 (1889); *Deheave v. Hines*, 217 Ill. App. 427, 434 (1920)) to support the argument that whether an injured party relied on a signal is a question of fact for the jury and should not be decided as a matter of law. None of the four concerns consideration of the voluntary undertaking principle and, therefore, none is apposite on the issue presented here.

An additional argument raised by the plaintiff relates to Mann's age of 16 at the time of the accident. The plaintiff claims that Mann's status as a minor raises the permissible inference that the minor deferred to the direction of an adult. In support of this contention, the plaintiff cites *Bell v. Giamarco*, 50 Ohio App. 3d 61, 553 N.E.2d 694 (1988), and *Sweet v. Ringwelski*, 362 Mich. 138, 106 N.W.2d 742 (1961). Once again, the plaintiff improperly assumes reliance by Mann of the alleged wave by Bartow when the evidence fails to establish that this is "the only probable, not merely possible, conclusion that can be drawn." *Wiegman*, 308 Ill. App. 3d at 796. The cases are also distinguishable on their facts.

In *Bell*, a five-year-old was struck by a car after a driver motioned her and her brother that it was safe to cross the street. The brother, older than the five-year-old, did not cross the street. The Ohio Appellate Court stated that, "[w]here the pedestrian is a young child, motor vehicle drivers are charged with greater care in discharging their duties than would be imposed were the pedestrian an adult." *Bell*, 50

Ohio App. 3d at 62-63, 553 N.E.2d at 697, citing *Sargent v. United Transportation Co.*, 56 Ohio App. 2d 159, 381 N.E.2d 1331 (1978). From that, the court held, "[w]hile an adult may have no right to rely on hand signals from drivers beckoning them to turn or cross the street, we conclude that a young child who so relies may properly seek to hold the operator liable for resulting injuries." *Bell*, 50 Ohio App. 3d at 63, 553 N.E.2d at 697, citing *Sweet*, 362 Mich. at 144, 106 N.W.2d at 745. *Bell* is also distinguishable in that the evidence established that the five-year-old did not enter the street until after the defendant signaled that crossing was safe. In fact, she immediately entered the street after the signal even against the efforts of her brother to restrain her. Here, as the plaintiff makes clear, Mann was "already in the street, when Mr. Bartow signaled."

In *Sweet*, a 10-year-old girl relied on what she considered directions from an adult that it was safe to cross the street. "She testified that she proceeded to the point of impact because she had relied on what she considered directions from an adult and that she would not otherwise have gone on until the traffic had cleared." *Sweet*, 362 Mich. at 144, 106 N.W.2d at 745. The Supreme Court of Michigan found it was error for the lower court to determine as a matter of law the intended meaning of the driver's waving action and, more importantly, what meaning it was reasonably foreseeable for a 10-year-old girl to attribute to that waving action. *Sweet*, 362 Mich. at 145, 106 N.W.2d at 746. *Sweet*, too, is distinguishable from the case before us if only because the injured party in *Sweet* was able to testify regarding her reliance on the signal. The salient issue in *Sweet* was the meaning of the signal, and not whether the evidence was sufficient to establish the pedestrian's reliance on the signal, as it is here.

Furthermore, contrary to the plaintiff's assertion, we do not read *Bell* or *Sweet* as establishing a "permissible inference" that a minor, unable to see oncoming traffic, would rely on the direction of an adult when crossing the street so as to make every such case one for the trier of fact to resolve. As discussed above, the outcome in *Bell* and *Sweet* turned on the evidence presented. In *Bell*, the five-year-old did not enter the street until after being signaled by the adult that it was safe to cross. In *Sweet*, the 10-year-old testified that she relied on the signal of the driver and understood the signal to mean that it was safe to cross. Moreover, while 16 years of age is still technically a minor, a 16-year-old is not "a young child" as discussed in *Bell*. See generally *Toney v. Mazariegos*, 166 Ill. App. 3d 399, 519 N.E.2d 1035 (1988) (discussion of the tender years doctrine applicable to children under the age of seven).

■ While the incident in this case is certainly unfortunate, the ir-

repressible fact is there is not enough evidence available to establish that "the only probable, not merely possible, conclusion that can be drawn" (*Wiegman*, 308 Ill. App. 3d at 796) is Mann relied on Bartow's signal and, without reliance, there is no causation. Because causation is a necessary element to a negligence action, the failure of proof on that point defeats the plaintiff's claim as to these defendants. Summary judgment was therefore proper.

## CONCLUSION

Consistent with the holding of the trial court, we hold that where nonreliance by Mann of the alleged "wave" by Bartow is just as probable as reliance by Mann of the alleged wave in crossing the street, the conclusion that there was reliance on the alleged wave is a matter of speculation, surmise and conjecture and a trier of fact is not permitted to so conclude. See *Wiegman*, 308 Ill. App. 3d 795-96.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

BURKE, P.J., and WOLFSON, J., concur.