2022 IL App (2d) 210109-U
Nos. 2-21-0109, 2-21-0124, 2-21-0128 cons.
Order filed January 13, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| HARVEY PROSISE, Administrator of the Estate of Mary L. Prosise, and as Special Administrator for Jesse Prosise, | ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-L-52 |
| BANK OF AMERICA, N.A., and JONES LANG LASALLE AMERICAS, INC., | ) ) ) ) | |
| Defendants-Appellees | ) ) | |
| (Bank of America, N.A., and Jones Lang LaSalle Americas, Inc., Third-Party Plaintiffs-Appellants; Clune Construction Co. and Tor Construction Co., Third-Party Defendants-Appellees). | ) ) ) ) ) ) | Honorable Joseph V. Salvi, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hudson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Plaintiff presented sufficient facts supporting proximate causation to allow case to go to trial; summary judgment reversed.

¶ 2    Mary Lou Prosise slipped and fell after walking through a puddle of water at the base of a

handicapped-access ramp at the property owned by the defendant, Bank of America, N.A. (Bank),

and maintained by the defendant, Jones Lang LaSalle Americas, Inc. (JLL). After she died of the injuries she sustained in the fall, her husband, Jesse Prosise, brought suit against the Bank and JLL.[1] They, in turn, filed third-party complaints for contribution against two contractors involved in building the ramp, Clune Construction Company and Tor Construction Company.

¶ 3    The trial court granted summary judgment in favor of the various defendants and against the plaintiff on the ground that the plaintiff had not shown the existence of any factual question regarding proximate cause. The plaintiff appealed (No. 2-21-0109), arguing that he had put forward sufficient evidence that the defendants' negligence proximately caused Mary Lou's injuries and death to show that a question of fact existed and thus summary judgment was inappropriate. The Bank and JLL each filed appeals as well (Nos. 2-21-0128 and 2-21-0124, respectively), arguing that summary judgment was proper, but if we reversed the grant of summary judgment in their favor on the plaintiff's claims, we should also reverse the summary judgments entered in favor of the third-party defendants. We consolidated the three appeals for decision. We now reverse the trial court's order in its entirety and remand for further proceedings.

¶ 4                                    I. BACKGROUND

¶ 5    Except as noted, the following facts are taken from the parties' statements of undisputed material facts. The Bank owned a branch office at 920 South Waukegan Road in Waukegan. The

---

[1] Jesse filed suit individually and as the administrator of Mary Lou's estate. After Jesse passed away in July 2020, Harvey Prosise was appointed administrator of Mary Lou's estate, as well as special administrator of Harvey's estate, and was substituted for Jesse as plaintiff. We refer to Harvey and the estates of Mary Lou and Jesse collectively as "the plaintiff."

Bank hired JLL to manage the property. The branch office was built by Clune, which subcontracted the concrete work on the handicapped-access ramp to Tor.

¶ 6    Mary Lou was a customer of the Bank. She was 64 years old and suffered from osteogenesis imperfecta, a congenital condition often called brittle bone disease. Because of her disability, she wore a full leg brace and walked with two canes. On June 22, 2015, Mary Lou drove her car to the branch office. As shown in video footage from the Bank's security cameras, she parked in a handicapped-reserved spot directly in front of the bank, got out of her car, and went into the branch office, using a handicapped-access ramp from the parking lot to the sidewalk. There was a puddle of water at the foot of the ramp that extended onto the bottom of the ramp. Mary Lou spent about 40 minutes in the bank. When she came out, she proceeded down the ramp. As she walked through the puddle at the base of the ramp, turned, and began to walk toward her car, she slipped or tripped and pitched forward, striking her head. She was taken to the hospital. She died on September 8, 2015.

¶ 7    The complaint filed by Jesse Prosise included wrongful death and survivor's claims. As amended, it included claims that the Bank and JLL were negligent by: improperly maintaining ingress and egress to the premises; permitting or causing the design, construction, and maintenance of the handicapped-access ramp with a steeper slope than allowed by applicable laws, an uneven surface at the base, and a material at the base that was known to become excessively slippery when wet; improperly permitting or designing the drainage of the parking lot so as to divert water across the base of the ramp; failing to make reasonable inspection of the premises; failing to warn of the risk presented by the ramp and the drainage problems; and failing to provide a route that was safe and suitable for disabled persons to go from the parking lot to the branch office door, or an escort

or other assistance for handicapped persons. The plaintiff claimed that this negligence caused Mary Lou's injuries and death.

¶ 8    The summary judgment motions filed by the Bank and JLL argued that the plaintiff could not present any competent evidence regarding what caused Mary Lou to fall, or any link between that cause and their alleged negligence. They also argued that the plaintiff could not show that they had notice of any alleged defect or unsafe condition of the premises. In support, they cited the depositions of the Bank's assistant manager and a bank teller, who both testified that they never noticed any water ponding near the handicapped-access ramp and were not aware of anyone else falling at the spot where Mary Lou fell.

¶ 9    Separately, the third-party defendants each filed motions for summary judgment. They both repeated the arguments of the Bank and JLL that there was no evidence of causation or proximate cause that created a question of fact. In addition, each one argued that it could not be liable in contribution for various reasons. Clune, the general contractor, argued that it was not liable under section 414 of the Restatement (Second) of Torts or agency law principles because Tor was an independent contractor, and Clune owed no contractual duties to the Bank or JLL because the construction contract had expired years ago. Tor, the subcontractor that constructed the ramp, argued that it merely followed the specifications provided to it, there was no evidence that the ramp was constructed improperly, and as a matter of law Tor could not be liable to third parties for any defect in the design or specifications it was given.

¶ 10    In response, the plaintiff argued that there was ample evidence regarding the cause of Mary Lou's fall and its relationship to the asserted negligence. Many of Mary Lou's movements (described above) in the parking lot, exterior, and interior of the branch office were recorded by the Bank's security cameras, which also captured the existence and extent of the water puddle at

the base of the ramp. Footage from these cameras showed that Mary Lou fell while or immediately after traversing the puddle at the base of the ramp.

¶ 11 The plaintiff also submitted an affidavit from John Van Ostrand, a forensic architect who visited the site of Mary Lou's fall in September 2015, making observations and taking photos and measurements. He opined within a reasonable degree of architectural certainty that the ponding at the foot of the ramp had existed for "a number of years prior to her fall," based on his observations of accumulated residue from such ponding at the foot of the ramp and the fact that the parking lot sloped toward the ramp rather than away from it, which would cause ponding at that location whenever it rained. In addition, the slope of the ramp itself was steeper than allowed under the Americans with Disabilities Act (ADA): ADA standards permitted a rise of no more than one inch over a distance of 12 inches, but the ramp sloped at a rise of one inch every 10 inches. The plaintiff presented deposition testimony showing that the Bank and JLL knew that the property was not ADA compliant and had scheduled remediation for 2015, but it was delayed and did not take place until after Mary Lou's fall.[2]

---

[2] The plaintiff also cited the deposition testimony of Jesse that Mary Lou told him, at the emergency room where she was taken after her fall, that her cane slipped out from under her and she fell. In their replies, the Bank and JLL argued that the trial court should not consider this statement when deciding whether to grant summary judgment because it was inadmissible hearsay and the excited utterance exception to the hearsay rule did not apply. No ruling on this argument appears in the record. Without expressing any opinion on the admissibility issue, we omit this testimony from our consideration of whether summary judgment was properly entered.

¶ 12    After hearing oral arguments, the trial court granted all of the motions for summary judgment. The record does not contain any transcript of the oral argument or the trial court's oral ruling. The written order states only that the court found, "as a matter of law, that plaintiff has not established with reasonable certainty that any act or omission on the part of defendants proximately caused the claimed injuries to" Mary Lou. These appeals followed.

¶ 13                                II. ANALYSIS

¶ 14    "The purpose of summary judgment is to determine whether a genuine issue of material fact exists, not to try a question of fact." *Thompson v. Gordon*, 241 Ill. 2d 428, 438 (2011). Thus, summary judgment is proper only when the pleadings, depositions and admissions on record, together with any affidavits, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.*; 735 ILCS 5/2-1005 (West 2020). "In determining whether a genuine issue as to any material fact exists, a court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the opponent." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). A triable issue precluding summary judgment exists where material facts are disputed or where the material facts are undisputed but reasonable persons might draw different inferences from the undisputed facts. *Id.* Plaintiffs need only present evidence sufficient to show a genuine dispute about a factual issue; they "are not required to prove their case at the summary judgment stage." *Thompson*, 241 Ill. 2d at 438. "Summary judgment should be granted only when the right of the moving party is clear and free from doubt." *Id.* We review the grant of summary judgment under a *de novo* standard (see *id.*), and will reverse if we find that a genuine issue of material fact exists.

¶ 15    The trial court granted summary judgment because it found that the plaintiff could not establish that Mary Lou's injuries and death were proximately caused by any negligence of the

various defendants. Proximate cause has two components: cause in fact and legal causation. *Mann v. Producer's Chemical Co.*, 356 Ill. App. 3d 967, 972 (2005). Here, the defendants challenged only the plaintiff's ability to establish cause in fact. "Cause in fact" requires that the defendant's negligence was "a material and substantial element in bringing about the injury" (*First Springfield Bank & Trust v. Galman*, 188 Ill. 2d 252, 258 (1999)) and it is reasonably certain that the injury would not have occurred but for that negligence (*Mann*, 356 Ill. App. 3d at 972). The defendant's negligence need not be the sole cause of the plaintiff's injury; the defendant may be liable if his conduct contributed in whole or in part to the injury. *Calloway v. Bovis Lend Lease, Inc.*, 2013 IL App (1st) 112746, ¶ 79. Proximate cause presents a question of fact to be determined by a jury, unless the undisputed facts show that the plaintiff would never be entitled to recover. *Garest v. Booth*, 2014 IL App (1st) 121845, ¶ 41 (citing *Abrams v. City of Chicago*, 211 Ill. 2d 251, 257-58 (2004)).

¶ 16    In this case, the security camera footage submitted by the plaintiff shows that there was a puddle of water covering the base of the ramp and that Mary Lou fell either while walking through the puddle or immediately afterward. The close proximity between her passage through the puddle and her fall is sufficient to, at the very least, create a genuine issue of fact about whether she fell because of the puddle. Moreover, the plaintiff offered evidence that the Bank and JLL knew that the ramp did not comply with the ADA and should reasonably have known that a puddle often formed at the base of the ramp. Viewing this evidence in the light most favorable to the plaintiff, as we must (*Adams*, 211 Ill. 2d at 43), the evidence demonstrated a genuine dispute about whether any aspect of the defendants' alleged negligence caused Mary Lou's injuries and death. Thus, summary judgment was improper.

¶ 17    The Bank and JLL argue that, because Mary Lou herself died before she could testify about the cause of her fall, any suggestion that she fell because of the puddle is simply speculation. They rely on *Kimbrough v. Jewel Cos.*, 92 Ill. App. 3d 813 (1981), *Haslett v. United Skates of America, Inc.*, 2019 IL App (1st) 181337, and *Berke v. Manilow*, 2016 IL App (1st) 150397. All of these cases are distinguishable, however.

¶ 18    In *Kimbrough*, a foundational case on the issue of proximate cause, the plaintiff fell on a ramp leaving the defendant's store. Although there were spots on the ramp that the plaintiff thought were grease, she admitted that she did not know if they were actually grease or any other slippery material, or if she came into contact with them, and she did not have any idea what caused her to fall. There was no other evidence regarding the cause of her fall. *Kimbrough*, 92 Ill. App. 3d 815-16. Here, by contrast, there was evidence—the video footage—that Mary Lou made contact with the puddle of water immediately before she fell.

¶ 19    In *Haslett*, the plaintiff, an expert roller skater, fell at a rink and injured her back. Although she believed that she must have fallen because of a piece of hard candy on the rink floor, neither she nor anyone else at the rink that day had seen any candy on the floor, which had been cleaned shortly before she began skating. *Haslett*, 2019 IL App (1st) 181337, ¶¶ 10-30. The trial court granted summary judgment on the basis that there was no evidence that any dangerous condition actually existed, and that even if such a condition existed, the defendant did not have notice of it. *Id.* ¶ 35. Again, that case is different from this one, in which the plaintiff has produced evidence both of a potentially hazardous condition (the puddle of water covering the base of the ramp) and an expert's opinion that the ponding of water in that location was a regular occurrence such that the defendants should have known of it.

¶ 20    In *Berke*, the plaintiff fell immediately after passing through a doorway.  No one saw him fall and he himself did not have any memory of his fall.  He offered expert opinions that the threshold was improperly designed, did not comply with building codes, and constituted a tripping hazard; that the automatic door closure system might also have pushed him forward, causing his fall; and that he was otherwise healthy when he fell.  *Berke*, 2016 IL App (1st) 150397, ¶¶ 9, 11-13. The trial court granted summary judgment, finding that, in the absence of any direct evidence about what caused the plaintiff's fall, the expert opinions were no more than speculation.  *Id.* ¶ 16.  Here, however, there was a "witness" to Mary Lou's fall—the Bank's security cameras.  Thus, there is evidence as to how her fall occurred, and the defendants have not shown that her expert's opinion testimony about the conditions on the premises was speculative or inconsistent with the video evidence.  In sum, none of the cases cited by the defendants compels any different conclusion than the one we reach here.

¶ 21    We note that, although both third-party defendants focus their arguments on the asserted lack of evidence of a causal link between their alleged negligence and Mary Lou's fall, they also argue that, even if we reverse the grant of summary judgment in favor of the Bank and JLL, we should still affirm the summary judgments granted in their favor.  We decline to do so.  The record does not reflect that the trial court ever considered those other arguments; rather, the language of the order indicates that the sole basis for the trial court's grant of summary judgment across the board was its belief that the plaintiff had not produced sufficient evidence of proximate cause. Moreover, the record suggests that the arguments raised by the third-party defendants may involve factual issues.  Accordingly, we leave those arguments aside and remand for the trial court to consider them in the first instance, in the event that the third-party defendants choose to renew their motions for summary judgment.

¶ 22                                    III. CONCLUSION

¶ 23    For the reasons stated, the judgment of the circuit court of Lake County is reversed and the

cause is remanded for further proceedings consistent with this decision.

¶ 24    Reversed and remanded.